(Rev. 01/21) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT
for the

## Western District of New York

Case No. 23cvl0661

*(to be filled in by the Clerk's Office)*

Samuel J. Saeli
_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

Dave Price; Andrew Molitor; Patrick Swanson;
Jason Schmidt; Brad Meyers; Michael Napierela;
Michael Holkin; Chad Artrip; Louis Habig; Jeffrey Brya
Village of Fredonia, NY;      *Defendant(s)* Chautauqua County, NY
Philip Maslak;                Emily Bobbara
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**JURY TRIAL:** Yes _X_ No ___

Amended Complaint

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

<div style="border:1px solid black;padding:8px;">

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

</div>

(Rev. 01/21) Complaint for Violation of Civil Rights (Prisoner)

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: Samuel J Saeli

All other names by which you have been known: _____

ID Number: 18B2527

Current Institution: Elmira Correctional Facility

Address: P.O. Box 500

Elmira    NY    14902
    *City*     *State*     *Zip Code*

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

**Defendant No. 1**

Name: Dave Price

Job or Title *(if known)*: Detective/Investigator of Fredonia Police Dep't; Current Chief of Police

Shield Number: Unknown

Employer: Village of Fredonia, N.Y

Address: 9-11 Central Avenue

Fredonia    NY    14063
    *City*     *State*     *Zip Code*

☒ Individual capacity    ☒ Official capacity

**Defendant No. 2**

Name: Brad Meyers

Job or Title *(if known)*: Former Chief of Police of the Fredonia Police Dept.

Shield Number: Unknown

Employer: Village of Fredonia, NY

Address: 9-11 Central Avenue

Fredonia    NY    14063
    *City*     *State*     *Zip Code*

☒ Individual capacity    ☒ Official capacity

(Rev. 01/21) Complaint for Violation of Civil Rights (Prisoner)

## I.    The Parties to This Complaint

~~A.    The Plaintiff(s)~~
B.    The Defendants #5

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name                                          Andrew Molitor

~~All other names by which~~  Job er Title    Assistant District Attorney, Chautauqua County, NY
~~you have been known:~~                      N/A

Shield ~~ID~~ Number  Employer               Chautauqua County, NY
~~Current institution~~
Address                                       1 North Erie Street
                                              Mayville          NY        14757
                                                City            State       Zip Code

☒ Individual capacity    ☒ official capacity

## B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. ~~1~~ 6
    Name                          Michael Napierela
    Job or Title *(if known)*     Fredonia Police officer
    Shield Number                 N/A
    Employer                      Fredonia, New York
    Address                       9-11 Central Ave
                                  Fredonia          NY        14063
                                    City            State       Zip Code
    ☒ Individual capacity    ☐ Official capacity

Defendant No. ~~2~~ 7
    Name                          Michael Hodkin
    Job or Title *(if known)*     Fredonia Police officer
    Shield Number                 N/A
    Employer                      Fredonia, NY
    Address                       9-11 Central Ave
                                  Fredonia          NY        14063
                                    City            State       Zip Code
    ☒ Individual capacity    ☒ Official capacity

Defendant No. 8 (Monell Claim)
Name: Federal Bureau of Investigations/Department of Justice
Address: 1 F.B.I Plaza, Buffalo, NY 14202/ U.S. Dept of Justice, 950 Pennsylvania Ave., N.W
Washington, D.C. 20530

Job or Title: Government Entity

☒ Individual Capacity   ☒ Official Capacity


Defendant No. 9

Name: Louis Habig
Job or Title: Chautauqua County Jail Correction Officer
Shield Number: Unknown
Employer: Chautauqua County, NY
Address: 1 North Erie Street
          Mayville, NY 14757
          ☒ Individual Capacity  ☒ Official Capacity


Defendant No. 10
Name: Jeffrey Grupa
Job or Title: Chautauqua County Jail Correction Officer/Lieutenant
Shield Number: Unknown
Employer: Chautauqua County, N.Y
Address: 1 North Erie Street
          Mayville NY 14757
          ☒ Individual Capacity  ☒ Official Capacity


Defendant No. 11 (Failure to perform administrative/investigative duties)
Name: Jason Schmidt
Job or Title: Chautauqua County District Attorney
Shield Number: N/A
Employer: Chautauqua County, N.Y
Address: 1 North Erie Street, Mayville, NY 14757
☒ Individual Capacity ☒ Official Capacity

Defendant No. 12 (failure to perform administrative/investigative duties)
Name: Emily Woodard
Job or Title: Assistant District Attorney, Chautauqua County
Shield Number: N/A
Employer: Chautauqua County, NY
Address: 1 North Erie Street, Mayville NY 14757
☒ Individual Capacity ☒ Official Capacity

Defendants: Continued

Defendant #14

Name: Philip Maslak

Job or Title: Fredonia Police Officer

Shield Number: Unknown

Employer: Fredonia, N.Y

Address: 9-11 Central Ave, Fredonia, NY 14063

☒ Individual Capacity  ☒ Official Capacity

)

Defendant No. 5 Monell Claim

Name ................................ Village of Fredonia, NY

Job or Title *(if known)* ......... Government Entity

Shield Number .................... N/A

Employer ........................... Village of Fredonia, NY

Address ............................ 9-11 Central Ave

Fredonia _____ NY _____ 14063

          *City*        *State*      *Zip Code*

☒ Individual capacity    ☐ Official capacity

Defendant No. 6 Monell Claim

Name ................................ Chautauqua County, NY

Job or Title *(if known)* ......... Government Entity "

Shield Number .................... N/A

Employer ........................... Chautauqua County, NY

Address ............................ 1 North Erie Street

Mayville _____ NY _____ 14757

          *City*        *State*      *Zip Code*

☒ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

**A.**    Are you bringing suit against *(check all that apply)*:

☒ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

**B.**    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

**C.**    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

(Rev. 01/21) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3 *Bivens Claim*
    Name      Chad Artrip
    Job or Title *(if known)*    F.B.I Special Agent
    Shield Number      Unknown
    Employer      Federal Bureau of Investigations; Dept of Justice
    Address      1 F.B.I Plaza, Buffalo, NY 14202; and/or U.S Dept of Justice; 950 Pennsylvania Ave, N.W

| Washington | D.C | 20530-0001 |
|---|---|---|
| City | State | Zip Code |

    ☒ Individual capacity      ☒ Official capacity

Defendant No. 4
    Name      Patrick Swanson
    Job or Title *(if known)*    Former Chautauqua County District Attorney (circa 2016 - 2020)
    Shield Number      Unknown
    Employer      State of New York/Chautauqua County, NY
    Address      1 North Erie Street

| Mayville | NY | 14757 |
|---|---|---|
| City | State | Zip Code |

    ☒ Individual capacity      ☒ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

    ☒ Federal officials (a *Bivens* claim)

    ☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Violation of Plaintiff Saeli's rights and protections under the Fourth Amendment of the U.S. Constitution; illegal search and seizure; Due Process; Equal Protection; False Arrest; False Imprisonment Failure to Intervene/Failure to Protect; Malicious Prosecution; Monell Liability; Conspiracy; Libel, Slander, defamation of Character; Intentional Infliction of Emotional Distress; Violation of NYCPL 60.45

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials? Violation of Plaintiff's rights and protections under the Fourth Amendment of the U.S Constitution

**D.** Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.(See attached complaint)

Village of Fredonia, NY and Chautauqua County, NY For Monell Liability for maintaining and promoting a policy and custom pertaining to law enforcement communication with the public that does not protect an individual from the dissemination of false, misleading, libelous slanderous and defamatory statements made by law enforcement throughout a criminal case. Moreover, Village of Fredonia, NY and Chautauqua County NY For Monell Liability for maintaining and promoting a policy and custom of arresting citizens without probable cause. See attached complaint for further/additional facts and information (See attached sheets for more info)

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☒ Pretrial detainee (I was a pretrial detainee at the time of the original filing in 2023)

☐ Civilly committed detainee

☐ Immigration detainee

☒ Convicted and sentenced state prisoner

☐ Convicted and sentenced federal prisoner

☐ Other *(explain)*

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

**A.** If the events giving rise to your claim arose outside an institution, describe where and when they arose.

Plaintiff's false arrest on or about August 15, 2016 at th. Fredonia Police Station in Fredonia NY at or about 8:30 pm. Whereas, Plaintiff agreed to meet with Defendants Meyers and Molitor to discuss the prior rights incident based on the promise that given the alleged victim's statements the night before that he "added" I will not be charged with any crime. After nearly since, I was free to leave, officers Meyers left, ADA Molitor left. I walk Philip Maskity, Fredonia Police officer, who walks in a charges me with a crime without being privy to the facts or promises of the case (See attached for info)

**B.** If the events giving rise to your claim arose in an institution, describe where and when they arose.

Illegal Search and Seizure 4th Amendment Violation at Chautauqua County Jail in Mayville NY. Libel, slander, defamation of character at Chautauqua County Jail in Mayville, NY

## A: Amended Complaint-Supervisor Liability: Overview -

Plaintiff hereby amends his original complaint alleging
Supervisory liability to include specific misconduct and
actions taken by Patrick Swanson (former Chautauqua County
District Attorney) and Brad Meyers (former Chief of Police of
Fredonia, NY) showing how their personal involvement in my state
criminal matter from 2016-2018 violated my constitutional
rights under the Fourth Amendment of the U.S Constitution
by their failure to adequately perform their administrative
and investigative functions of their respected positions in
the execution of a facially deficient unconstitutional search warrant
at issue at Plaintiff's 2018 trial, leading to Plaintiff's wrongful conviction.

Furthermore, as district attorney and chief of police, Swanson
and Meyers had a supervisory role in overseeing and advising defendants
Molitor and Price in that execution of that facially deficient search
warrant, that based on their education, training and experience,
and in their reading and reviewing the search warrant in this matter,
defendants should have known that the search warrant the applied
for and executed was violative of the Fourth Amendment of the
U.S Constitution and case law, as stated herein.

Defendant Meyers took part in the interrogation of Plaintiff
on August 15, 2016. (See Exhibit B, page 65). One of his and Molitor's
subjects of discussion during that interview was my use of a cellphone.
Plaintiff believes that the content of that interrogation, which
caused Plaintiff to conduct certain google searches based on the
information they provided coupled with the government's successful

introduction of those google searches at Plaintiff's 2018 trial
amounted to the government using my statements, produced
as a result of that interrogation (which the government lied about
and covered up for two years (see Exhibits Z and Z1 ) against
Plaintiff at his 2018 trial. Meyers administrative and investigative
role as an organizer of that interrogation, the reneging of his
promise not to prosecute Plaintiff in exchange for Plaintiff's participation
in the interview (based on the alleged victim's statement the night of
the alleged crime that he walked to the place he was found at, which
he told to Fredonia Police Officer Michael Hodkin), Meyers failure
to properly advise defendant Philip Maslak not to arrest
Plaintiff based on his promise not to prosecute (see Exhibit Z, pg 1 )
as well as Meyers' oversight, advisory role of and administrative
and investigative responsibilities over the matter were all failures
on defendant Meyers' part that led to the execution of the
facially deficient, unconstitutional search warrant being executed
against Plaintiff. Furthermore, Meyers' coverup of that
August 15, 2016 interrogation with Molitor and Plaintiff not only
led to Plaintiff's false arrest by _____ : defendant Maslak (see
Exhibit Z, page 1 ) but also led to defendant Dave Price
committing perjury at Plaintiff's 2018 trial (see Exhibit B    pg 65)
"I was made aware that he came to the Fredonia Police Department.
I'm not aware that he was there for the purpose of an interview".
"To the best of my knowledge, there was never an interview completed
of Mr. Szeli" (Exhibit B  lines 16-18; 21-22) Compare to Molitor's
statement in Exhibit Z ). Therefore, Dave Price committed perjury,

is a liar and a fraud and knowingly participated in a conspiracy to coverup material facts of an exculpatory nature with defendant's Swanson and Molitor that had a prejudicial effect on Plaintiff's trial. After all, what kind of "detective/investigator" can Dave Price be if as "detective/investigator" he knows all aspects of defendant Saeli's case, but just so happens not to be aware of the crucial fact of whether or not an interview occurred with Plaintiff Saeli? (Compare Exhibits Z Z, and B) The fact is he knew that an interview/interrogation occurred with Plaintiff Saeli, Molitor and Meyers and chose to commit perjury at Plaintiff's 2018 trial to protect the interests of Swanson, Molitor and Meyers and violate Plaintiff's right to a fair trial and due process under the 14th Amendment of the U.S. Constitution.

As stated more thoroughly herein, I believe that I've given defendant Swanson and Meyers fair notice of what the claim against them is about. They were negligent in how (1) Swanson and Meyers advised Molitor in applying for the search warrant; (2) How Meyers advised defendant Price in executing the search warrant (See Exhibits B C) and (3) Both Swanson and Meyers (and Dave Price) were negligent in their administrative and investigative functions of their positions and because of this, defendants Swanson, Meyers and Price did violate Plaintiff's Fourth and Fourteenth Amendment rights and protections under the U.S. Constitution.

Lastly, former Chief of Police Brad Meyers failed to follow the established policy and procedure that the Village of Fredonia N.Y adopted to ensure compliance with New York State law and

evidentiary rules, including, but not limited to:

① Interviews/Interrogations were properly documented as evidence in Plaintiff's case in accordance with NYCPL. Sect 60.45 especially since Plaintiff's Google searches, conducted as a result of that interrogation (denied by the government of having occurred for two years, see Exhibit Z and Z₁) was paramount to using Plaintiff's statements against him at trial. Aside from the evidence contained in Exhibit Z₁, there was no proper recording or documentation of the more than five hour long interview/interrogation conducted by Meyers and Militor of Plaintiff Saeli. (Apparently, defendants will want this Court to believe that Plaintiff, Meyers and Molitor sat in silence for over five hours engaging in shadow puppets with eachother).

② All evidence, including exculpatory evidence is properly documented, recorded and preserved for use at trial, not just the evidence they pick and choose to document as important for their self serving agenda. Whereas, as a result, the government magically lost two key pieces of evidence that more than likely exonerates Plaintiff of any wrong doing in that matter ① the vehicle dash cam taken by defendant Fredonia Police Officer Michael Napierela through his illegal search of Plaintiff's property on the night of the alleged crime, captured on video surveillance as the information he obtained on that date and time could only be obtained through defendant Napierela entering illegally onto the property and without a search warrant

③ The tape recorded conversation between Fredonia Police Officer Michael Hodkin and the alleged victim on the night of

the alleged crime that "somehow" disappeared. (see Exhibit Z.)

Therefore, the Village of Fredonia, New York's policy concerning the documentation and preservation of evidence in criminal matters was deficient, not properly overseen/supervised and not properly adhered to by defendants Meyers, Price and Maslak and non existent in Plaintiff Saeli's criminal case. Furthermore, Swanson and Meyers failed to adequately perform the administrative and investigative functions as supervisors in Plaintiff Saeli's case and that failure led to the destruction of exculpatory evidence in Plaintiff Saeli's case and had a prejudicial and bias effect on Plaintiff's trial, all in violation of Plaintiff's civil and constitutional rights as stated herein.

Pg 46

failed in his administrative and investigative duties/functions of his position and failed to intervene on Plaintiff's behalf when Fredonia Police Officer Philip Maslak falsely arrested Plaintiff on August 16, 2016 (see Exhibit Z1) and when Dave Price executed an unconstitutional search warrant against Plaintiff, thus violating Plaintiff's Fourth Amendment Rights under the U.S. Constitution (see Exhibits C I K M and Z)

Monell Liability of the Village of Fredonia, N.Y.; Chautauqua County, N.Y and the Federal Bureau of Investigations (F.B.I) For Maintaining and Promoting a Custom and Policy of Communication With the Public That Promotes Disinformation, Lies, Libel, Slander, Defamation of Plaintiff's Character and That Intentionally Inflicted Emotional Distress Onto Plaintiff:

After the August 16, 2016 mishandling of Plaintiff's interrogation by Brad Meyers and Andrew Molitor, the members of the Fredonia Police Department, specifically Brad Meyers and Dave Price conspired with the Chautauqua County District Attorneys Office, specifically Chautauqua County District Attorney Patrick Swanson to engage in a public campaign of coverup, lies, and disinformation concerning the August 16, 2016 that defendant Swanson denied having occurred, which amounted to slander, libel and defamation to Plaintiff's character as it was in contra to court statements made by Plaintiff and it to the truth as nearly after two years of coverup, in 2018, Andrew Molitor was finally forced to give the court his half hearted statements, admitting that such an interrogation did indeed occur and he was a part of it.

Pg 4c

Upon conviction in 2018, the "Corrupt five" of Chad Artrip; Brad Meyers; Andrew Molitor; Patrick Swanson and Dave Price conducted a "victory tour" press conference attended by Buffalo News Channel 2, WKBW News Channel 7, Spectrum News and the local newspapers of the Observer and the Jamestown Post Journal (see Exhibit Z1). This press conference occurred in June of 2018. With the "corrupt fives" picture captured for the moment, then Chautauqua County D.A Patrick Swanson, present with F.B.I agent Chad Artrip, announced falsely that there were "more victims" out there (even though that was already proven false, and that federal charges were pending, which was false and never came to fruition. Between the false information spread by defendants through their false press releases and media interviews of Patrick Swanson in August, September and October of 2016 (see Exhibit Z and compare to Exhibit Z); defendant Jason Schmidt's defamatory August 24, 2016 Facebook posts and media press releases and defendant Brad Meyers' slanderous and defamatory radio interview about Plaintiff on WDOE in June of 2018 in which he promised "to get" Plaintiff (see https://chautauquatoday.com/news/details.cfm?clientid=25 & id=251692 #.WWobMZryMB) and the "corrupt fives" victory tour press conference in June of 2018, Plaintiff was subject to public scorn as a result of the lies, libel, slander and defamatory comments espoused by defendants Price, Swanson, Molitor, Meyers and Artrip throughout their media crusade against Plaintiff and as a result, defendants did deliberately and intentionally inflict emotional distress onto Plaintiff in order to promote and protect their own self interests.

In contrast to their media campaign, circa 2018, a murder that occurred in the Village of Fredonia that year, defendant Brad Meyers was criticized for not providing any details, interviews or press releases about that crime, stating in a 2018 Observer article that he and his officers are not commenting on the case to prevent public speculation and hearsay about the crime and the investigation of it. (see Observertoday.com/murder in Fredonia, N.Y.) Well, where was his concern about preventing public speculation in Plaintiffs case, that led Meyers, his officers and Chad Artrip false stating that their were more victims in Plaintiffs case and more charges pending against Plaintiff. For Plaintiff, there was no concern that Meyers' media interviews and comments would lead to speculation or hearsay, but for the murder investigation, defendant Meyers remained silent to prevent public speculation and hearsay in that case. And their in lies the inequality and lack of equal protection under the law for Plaintiff Saeli as exhibited by defendant's conduct in this matter. Whereas, the Village of Fredonia, N.Y. has an official policy and custom pertaining to communication with the media and public, detailing who within the Fredonia Police Department will be responsible for speaking with the public via press releases and media interviews (the Chief of Police), for what purposes they shall speak to the public (to inform the public about criminal justice matters occurring in the community) and how, (via press releases and interviews with local media). Plaintiff has FOIL requested the Village of Fredonia NY's policy and custom regarding its village employees commenting/ interviews with the media, but as of Nov 10, 2021 no reply to the FOIL request has been received by Plaintiff. However, as shown in Exhibits Z1 Z2 and Z3 and compare to exhibit Z)


that policy and custom of communication with the public and the media was used and abused by defendants and utilized against Plaintiff in an intentionally discriminatory manner to promote and protect the self interests of the Chief of Police Brad Meyers to coverup his and his officers misconduct throughout Plaintiffs case, including but not limited to the August 16, 2016 interrogation, and that policy and custom of communicating with the media had an adverse, detrimental effect on Plaintiff, manifesting itself in the form of public scorn, libel, slander and defamation of Plaintiff's character (see Exhibits Z $Z_1$ and $Z_2$ and $Z_3$) and in following the Fredonia communication policy and custom with the public and the media, it is painfully obvious that Brad Meyers manipulated that policy by expressing and infiltrating his own personal bias, beliefs and opinions into the matter (see the link to his comments https://chautauquatoday.com/news/details.cfm?clientid=25 &id=251692#.WhloMZ ryM8) to promote and protect his own self interest by engaging in libel, slander and defamation of Plaintiffs character and this shows that Brad Meyers, then chief of Police was motivated by discriminatory animus toward Plaintiff Saeli.

<u>Chautauqua County, N.Y's Policy and Custom of Communicating With the Public and the Media.</u>

Likewise, Chautauqua County, N.Y has a custom and policy permitting members of its government to communicate with the public and media in a manner without oversight/supervision that promotes disinformation, lies, libel, slander and defamation of character of Plaintiff that was false and misleading and subjected Plaintiff to undue public and the intentional infliction of emotional distress. After the August 16, 2016 mishandling of Plaintiff's interrogation by Brad Meyers and Andrew Molitor (see Exhibits Z $Z_1$ and $Z_3$) Plaintiff was thrust into a vortex of lies, libel, slander and defamation of a media storm created by then Chautauqua County District Attorney Patrick Swanson and then candidate for D.A Jason Schmidt. (See Exhibit $Z_1$ ) In 2018 after Plaintiffs second trial but before

Sentencing, Patrick Swanson fired Andrew Molitor from the D.A's office due to the misconduct he committed throughout my case. In 2020 when Jason Schmidt was elected D.A he suprisingly rehired Molitor despite criticising him over the handling of Plaintiff's case in what social media commentators stated was a pay to play bribery scheme in which Molitor paid $10,000.00 to Schmidt's campaign and conducted other political activity on behalf of Schmidt in exchange for Schmidt promising to give Molitor his job back if elected. (see Exhibit K).

The articles, press releases and media interviews given by then district attorney Patrick Swanson (see Exhibits $Z_1$ ) is just the tip of the iceberg of how he misused the communication policy established by Chautauqua County NY, without any oversight or verification of the statements allowed Patrick Swanson to engage in libel, slander and defamation of character of Plaintiff to promote and protect his own self interests while covering up the truth during a political campaign/election.

Upon Plaintiff's 2018 conviction, Patrick Swanson, as part of the "corrupt five's" victory tour/press conference. (see Exhibit $Z_1$) conducted a media press conference attended by ① Wgrz News Channel 2; ② WKBW News Channel 7; ③ Spectrum News and the local newspapers of the Observer (Dunkirk) and the Jamestown Past Journal (Jamestown N.Y). This occurred in June of 2018 and is separate from the press releases and media interviews given by Patrick Swanson in August, September, and October of 2016 following Plaintiff's arrest and separate and distinct from Patrick Swanson's press releases following Plaintiff's 2017 mistrial and Plaintiff recognizes the fact that media interviews and press releases by Patrick Swanson are part of the administrative functions of his position as district attorney. However, with all of Patrick Swanson's press releases and media interviews he conducted by Patrick Swanson pertaining to Plaintiff, his comments were false, libelous,

Slanderous and defamatory, especially when he falsely disclosed to the public that ① he believed their were more victims of Plaintiff Saeli and that ② federal charges were imminent. (See Exhibit Z.)

Whereas, Chautauqua County, N.Y. has an official policy and custom pertaining to its Chautauqua County District Attorneys Office permiting the D.A (Patrick Swanson) to communicate with the media and public detailing who within the Chautauqua County District Attorneys Office will be responsible for speaking with the public via press release and media interviews on behalf of the county regarding criminal cases (the Chautauqua County District Attorney, then Patrick Swanson, now Jason Schmidt), for what purposes they shall speak to the public (to inform the public about arrests and criminal justice matters in the community, etc. However, as exhibited in exhibits <u>Z1</u>, shows that Chautauqua County's policy and custom of communication with the public and the media was applied to Plaintiff Saeli in an intentionally discriminatory manner to promote and protect the self interests of Chautauqua County District Attorney Patrick Swanson and to coverup his and Molitor's mishandling of the August 16, 2016 interrogation and that policy and custom of communicating with the media had an adverse effect, detrimental effect on Plaintiff, manifesting itself in the form of public scorn, libel, slander, and defamation of character of Plaintiff and that in following Chautauqua County's policy and custom of communication with the public and media as shown in Exhibits <u>Z1</u> it is painfully obvious that Jason Schmidt (as D.A in 2024) and Patrick Swanson abused and manipulated that policy to express lies and libel, slander and defamatory statements about Plaintiff and such conduct was motivated by discriminatory animus. Therefore, the Monell claim against Chautauqua County, NY for maintaining and promoting a policy and custom of communication with the public and the media that was manipulated and abused by Chautauqua County District Attorney Patrick Swanson and later Jason Schmidt in an intentionally discriminatory manner that was motivated by discriminatory animus. (See Exhibits <u>Z1</u>)

Monell Liability of the Federal Bureau of Investigations For Maintaining an Promoting a Custom and Policy of its Agents of Communicating With The Public and the Media that Promotes Disinformation, Lies, Libel, Slander and Defamation of Plaintiff's Character.

There can be no doubt that the Federal Bureau of Investigations (F.B.I) maintains a policy and custom of the Bureau and its agents to follow when disclosing information to the public concerning on-going investigations of a criminal matter and who is to disclose that information to the public, what information is to be disclosed to the public and when and where that information is to be disclosed. We've all seen F.B.I press conferences, who does them, when they do them and with the approval of its supervisors. And of course we all know the F.B.I mantra of "we don't comment on pending litigation." (see Exhibit 2) F.B.I Special Agent Chad Artrip followed non of the F.B.I policies and procedures for participating in press conferences and did not seek and was not granted supervisory approval to participate in the June 2018 press conference invoking his name and conduct. (see Exhibit 4)

Amended Complaint

Plaintiff Saeli filed his original Complaint on November 14, 2023. The case number for that matter is 23-CV-6661-CJS. Based on the Order dated September 4, 2024, Plaintiff seeks to amend that original complaint and incorporate it into this amended complaint via referer and incorporation.

In August of 2028 Petitioner's conviction in 2018, rendered in Chautauqua County Court, was reversed and vacated by the New York State Supreme Court, Appellate Division, Fourth Dept. Plaintiff was then transferred from State custody back to the custody of the Chautauqua County Department of Sheriff. All in all, Plaintiff has been in continuous custody from August of 2016 to the present time. In June of 2024, Petitioner was convicted at trial and in August of 2024 resentenced to the crime of NYPL 135.20, Kidnapping in the Second Degree. This was Plaintiff's third trial and a Notice of Appeal has been filed on or about September 10, 2024. Under New York State law, a conviction does not become final until a defendant has exhausted his appellate remedies. Plaintiff remains confident that his conviction rendered in 2024 will be vacated, due to factual and constitutional issues that arose. It is my hope that the amended complaint "will give the defendants fair notice of what the claim is and the grounds upon which it rests."

Based on the original complaint and all exhibits included in that complaint as well as the continuation of exhibits for that complaint under numbers 5 and 6 of the document text, Plaintiff Saeli states the following:

## Section 1983 and Bivens Claims: Supervisor Liability

In addition to the facts and information contained in Plaintiff's original complaint, herein incorporated as Exhibit I, Plaintiff seeks to add defendants Patrick Swanson, Brad Meyers and Philip Maslak, for wrong doing and misconduct committed by these defendants in their official and individual capacities for failure to ① properly administer the administrative and investigative functions of their position and ② Failure to protect. The alleged crime in this matter occurred on August 15, 2016. That night, the alleged victim told two different government witnesses Elyse Mead and Michael Hodkin (a Fredonia Police Officer) that he had walked from Walmart (Fredonia NY) (See Exhibit 5 & 6) the night of the alleged crime to where he was found at by Mead and Hodkin. Based on this, there can be no basis or probable cause to charge Plaintiff with the crime of Kidnapping in the 2nd deg.

On August 16, 2016, defendant Brad Meyers, then Chief of Police of the Fredonia Police Department contacted a member of Plaintiff's family and left a card with his name and number for Plaintiff to call. Plaintiff was at work, but on his lunch break he did call Mr. Meyers back. Mr. Meyers asked if Plaintiff could come into the station and give a statement and Mr. Meyers noted that Plaintiff is not in trouble, he just wanted to have Plaintiff's statement to close out the case and he promised that in exchange for Plaintiff's statement, he promised that no charges would be placed against Plaintiff based on the alleged victim's statements to Fredonia Police Officer Michael Hodkin that he had walked from Walmart the night before. Based on that, Plaintiff drove to the Fredonia Police Station on August 16, 2016 to give his statement. Upon arriving at the facility Plaintiff was met by Brad Meyers and Philip Maslak. Plaintiff was brought into a room by Meyers and introduced by Meyers to Chautauqua County ADA Andrew Molitor. The questioning was conducted by both Meyers and Molitor, (lasting over five hours) and Molitor reiterated the promise that Meyers made to Plaintiff over the phone, that Plaintiff was not in any trouble, wasn't facing any charges based on the alleged victim's statements to Hodkin the night before, and that in exchange for Plaintiff's statement he promised that no charges would be brought against Plaintiff.

Plaintiff Saeli provided defendants Molitor and Meyers his statements about the alleged incident which included the following confirmed facts: About a week or two prior to the alleged crime on August 15, 2016 Plaintiff and the alleged victim attended the same family birthday party for the neice of Plaintiff's girlfriend and Plaintiff believes that is how the alleged victim recognized Plaintiff at Walmart. Being cordial and friendly, the two recognized eachother and embraced eachother with a handshake and a hug and then went their separate ways as shown on a surveillance video introduced at trial.

Later on, a few minutes later as shown on video, the alleged victim reapproached Plaintiff and asked Plaintiff if he could use his phone to call his mom as acknowledged by the people in their 2023 Appellate brief. Plaintiff's phone was charging in the car, but that is the reason why Plaintiff left the store in the first place, so the alleged victim could use the phone. For nearly two years, the dynamically corrupt duo of Molitor and Swanson covered up the fact that the alleged victim asked to use Plaintiff's phone (as they acknowledged in their appellate brief) and that the alleged victim told Fredonia Police Officer Michael Hotkin that he walked from Walmart that night. (See Exhibits M and Z, and Z3).

While using the phone, Plaintiff was talking to Messiah Gonzalez, a person who was supposed to be a government witness at Plaintiff's 2018 trial and a defense witness at the 2024 trial. When the alleged victim was finished using the phone, the alleged victim said "thanks" and began walking towards a bowling alley on adjacent property to Walmart. When the interview was done, Meyers and Molitor left the building and told Plaintiff he was free to go. Upon waiting for his ride to leave, in walks Fredonia Police officer Philip Maslak who falsely arrests Plaintiff without probable cause and without knowledge of the promise Meyers and Molitor made to Plaintiff not to prosecute in exchange for Plaintiff's participation in the interview/interrogation. Whereas, as Chief of Police, Meyers had a responsibility and supervisor liability over Maslak and to prevent Maslak from violating Plaintiff's rights and protections against false arrest and false imprisonment. Furthermore, Meyers failed to properly train Philip Maslak on issues including but not limited to following the proper chain of command when effectuating arrest and to properly advise Maslak of the promise he and Molitor made to Plaintiff not to charge Plaintiff with a crime. Of course Meyers, Molitor and Swanson lied about and covered up the fact that the interrogation occurred (See Exhibits Z and Z3) and didn't document or record the interview in any way, in violation of NYCPL Sect. 60.45. Thus began two years of lies, fraud, and coverup by Swanson, Meyers, Molitor, and Price to conspire together and coverup the existence of the interrogation publicly and with the Court. (See Exhibit Z Z, and Z3 and M). Andrew Molitor finally admitted to his involvement in the interrogation in a half hearted disclosure at a court hearing in 2018. (See Exhibit Z). By failing to properly advise and supervise Maslak on August 16, 2024 pertaining to that interrogation, defendant Brad Meyers and Philip Maslak violated Petitioner's constitutional rights and protections against false arrest and false imprisonment. Brad Meyers had an administrative and supervisory responsibility to properly advise his officers (Maslak, Price and Hotkin) of the interrogation he conducted of Plaintiff with ADA Molitor and the circumstances surrounding it, instead of allowing defendant Price to lie about and commit perjury at Plaintiff's 2018 trial during Price's testimony in which he denied on that the stand that "to his knowledge, their never was an interview completed." (See Exhibit B). Furthermore, Brad Meyers' failure to advise and disclose the facts and circumstances surrounding that interrogation led to Philip Maslak falsely arresting Plaintiff and led to defendant Price committing perjury at Plaintiff's Second trial in 2018 in which Dave Price denied that such an interrogation occurred. (See Exhibit B) and compare to exhibit Z). Lastly, Brad Meyers, based on his promises and assurances he made to Plaintiff to induce that August 16, 2016 interrogation, failed to intervene and did violate Plaintiff's 4th, 6th and 14th Amendment rights under the U.S Constitution and failed to properly investigate and advise his officer Dave Price in properly executing a search warrant. Whereas, defendant Meyers failed to disclose Price the contents of the interrogation and the promises and assurances he made not to prosecute Plaintiff and had Meyers done so, that search warrant would never have been executed. In every regard, Defendant Meyers

None of Plaintiff's claims are barred by the relevant statute of limitations. The statute of limitations for actions brought pursuant to 42 USC 1983 in New York State is the three year period provided for by NYCPL Sect. 214(s). "The claim accrues when the Plaintiff knows or has reason to know of the harm and the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." Plaintiff asserts that his knowledge of the discriminatory act arose as as result of the New York State Supreme Court, Appellate Division, Fourth Department reversed and vacated Plaintiff's state conviction on a facially deficient search warrant on August 11 2023 and the new discovery process that ensued as a result. Therefore, Plaintiff believes the statute of limitations on all claims raised should be tolled until August 11, 2023.

Plaintiff filed his original complaint on November 14, 2023, nearly three months after the New York State Supreme Court, Appellate Division, Fourth Department reversed and vacated Plaintiff's 2018 state conviction of which these claims arose. Prior to the Fourth Department's ruling, Plaintiff had no legal justification and lacked the documentation needed to support such claim (that was only provided to Plaintiff through the new discovery process that commenced due to the Fourth Department's ruling on August 11, 2023) against the defendants named herein. And if Plaintiff had filed his complaint prior to the Fourth Department's ruling and the subsequent discovery process, the complaint likely would have been dismissed for lack of support. The trial court in 2018 (Paul Wojtaszek) reviewed the search warrant and found no issues warranting suppression of the evidence based on his review of that warrant. At that point Plaintiff had no avenue to challenge the warrant, and based on the trial court's ruling had no knowledge to believe that the search warrant was anything but constitutional. Furthermore, Plaintiff would have lacked the 2018 trial transcripts, the news paper articles, interviews and press releases, and facebook posts between defendants Swanson and Schmidt, including the news conference article attended by Chad Artrip, Andrew Molitor, Patrick Swanson, Brad Meyers and Dave Price all of which was libelous, slanderous, and defamatory toward Plaintiff all of which didn't become available to Plaintiff until the 2023-2024 discovery process. It wasn't until the August 11, 2023 New York State Supreme Court, Appellate Division, Fourth Department, reversed and vacated Plaintiff's 2018 conviction did Plaintiff become knowledged and aware of the harm that defendant's Molitor, Artrip, Price, Habig, Drupay, Meyers and Swanson caused, i.e libel, slander, defamation of character, violating Plaintiff's Fourth Amendment rights and protections under the U.S. Constitution. While the original complaint was filed on November 14, 2023 and it relates to incidents that occurred at the time of his arrest in 2016 and the ongoing investigation into his alleged crimes and first trial in 2017 and second trial in 2018, the limitations period for these claims should be tolled by and through the August 11, 2023 Fourth Department's ruling. Furthermore, in or about 2021, New York Discovery rules NYCPL Sect 245.10 and 245.20 and as a result of the 2023 Fourth Department's ruling and the ordering of a new trial, Plaintiff was provided with new additional discovery that he wasn't privy to in 2017 and 2018, including but not limited to grand jury minutes and trial court transcripts, documents substantiating the off the record interrogation conducted by defendants Andrew Molitor and Brad Meyers and the subsequent cover up that ensued and press releases and media interviews given by the D.As office pertaining to defendant's case supporting Plaintiff's claim that he was libeled, slandered and defamed by defendant. As I received these documents through the discovery process, I then sent them to this District Court to substantiate my claims. (See Exhibits B,C,D,E,F,M, Z Z1, Z2, Z3). Therefore, Plaintiff didn't have any knowledge of the harm committed by defendants against Kim and didn't have the evidence to substantiate any of the claims Plaintiff now raises until the 2023 by the 4th Department. Therefore, Plaintiff respectfully requests that this Court considers tolling the statute of limitations until August 11, 2023.

However, in June of 2018, at press conference conducted by Federal Bureau of Investigations Special agent Chad Artrip who was front and center at the media press conference, Chautauqua County District Attorney Patrick Swanson disclosed the existence of an FBI investigation into Plaintiff and pending federal charges, that never came to fruition and ended up being false. No further charges were ever brought against Plaintiff and Special agent chad Artrip never issued any corrections to the story or comments. Obviously, Patrick Swanson portrayed that his comments were based on information and conversations with the F.B.I special agent Chad Artrip. No charges were ever filed by the F.B.I against Plaintiff, and Plaintiff highly doubts that (one) Special Agent Chad Artrips participation in Plaintiffs criminal case was proper or ever approved by a supervisor; (2) That special agent Chad Artrip was ever approved to comment publicly on behalf of the FBI about Plaintiff case (3) That any investigation into Plaintiff was properly authorized or commenced. As stated in the attached original complaint, Special Agent Chad Artrip was responsible for the execution of a facially deficient unconstitutional search warrant that violated Plaintiff's Fourth Amendment rights under the U.S. Constitution and committed perjury at Plaintiff's 2018 trial. (See Addendum A, docket numbers 5, and 6)

Special Agent Chad Artrip's presence at the June 2018 press conference portrayed his and the F.B.I's involvement in Plaintiff's case and their condoning of the disclosure to the public about an investigation and criminal charges against Plaintiff, a role normally reserved for a member of the U.S. Attorneys office. In any event the representation of the FBI at this media conference by Chad Artrip and the comments and representations made at the press conference were false, libelous, slanderous, defamatory and meant to inflame the public. The F.B.I does have an official policy and custom pertaining to communication with the media detailing how authorization is to be given for a member of the FBI to comment publicly, who is authorized to speak on behalf of the FBI to the public (usually a member of the U.S. Attorneys office), for what purposes they shall speak to the public and when they should speak to the public about a case (after charges have been brought, not like in Plaintiff's case before any charges were ever brought or authorized. However, as exhibited in the exhibits contained in docket numbers 5 and 6 shows that the policy and custom that the F.B.I implements for communication with the public and the media was not followed by special agent chad Artrip and was applied to Plaintiff Saeli's case in an intentionally discriminatory manner that had an adverse effect on Plaintiff, manifesting itself in the form of public scorn, libel, slander and defamation of character of Plaintiff Saeli and such conduct of chad Artrip in utilizing the FBI's media's policy was motivated by discriminatory animus. (see Exhibit Z1)

Libel, Slander, Defamation of character and Intentional Infliction of Emotional Distress by defendants Swanson, Artrip, Molitor, Schmidt, Meyers and Price.

Every law enforcement officer in New York State, including the district attorneys that advise them (in this case, Swanson, Molitor, and Schmidt advising Artrip, Meyers and Price) knows that a defendant is not criminally convicted of any crime, until that defendant exhausts his criminal appeals. Defendant Saeli's criminal appeal in this matter was exhausted on August 11, 2023.

As depicted in Exhibit Z, the Chautauqua County District Attorneys office, under the direction of then Chautauqua County District Attorney Patrick Swanson and assistant district attorney Andrew Molitor (later fired by Swanson in 2018 for misconduct Molitor committed throughout my criminal case (see Exhibits Z and Z1) engaged in a media campaign of lies, and coverup against Plaintiff Saeli to refute Plaintiff's assertion and public comments that defendants Meyers and Molitor conducted an interrogation of Plaintiff on August 15, 2016, the day after the alleged crime, that included the disclosure of certain information and that such interrogation was premised on Meyers and Molitor's promise not to prosecute given that the alleged victim told Fredonia Police Officer Michael Hodkin the night of the alleged crime that he had walked to the location he was found at. (See Exhibit M) These lies and coverup that defendants engaged in to refute Plaintiff's assertions to the fact of the interrogation constitutes, Plaintiff believes, libel, slander, defamation of character that resulted in the intentional infliction of emotional distress onto Plaintiff and subjected Plaintiff to undue public scorn and harrassment. The comments contained in the articles in Exhibit Z, largely made by defendant Swanson occurred in August, September and October of 2016 and turned over to Plaintiff Saeli as part of the 2024 discovery process for his criminal case in Chautauqua County. Plaintiff was incarcerated from August 16 2016 and had not seen or read the articles until they were turned over through the 2024 discovery process.

The mishandling of the interrogation and the setting of bail in Plaintiff's criminal case fueled the scorn, libel, and slander of Plaintiff Saeli as Schmidt and Swanson exploited the situation to promote and protect their own self interests during a political election. Jason          Schmidt stated that he supported a uniform bail scheduling order following the Saeli mishap in which a lack of communication resulted in "Kidnapper getting off on bail," neglecting the facts, circumstances, and promises that led Plaintiff Saeli to the Fredonia Police Station the day after the alleged crime in the first place. Patrick Swanson, instead of admitting that an ADA from his office was involved in the interrogation of Plaintiff Saeli, accused the judge who set the bail, Judge Prince of failing to notify the district attorneys office that an arraignment was about to take place" and of violating the criminal Procedure law. All contrary to the facts, and the truth that Plaintiff Saeli was stating publicly about the situation. Jason Schmidt then posted on his personal facebook page "Sometime after 11:30 a.m. on 8/15, Fredonia police notified Swanson that Samuel Saeli had been identified as a suspect in the kidnapping and would be interviewed. As a result, a representative from the District Attorneys office was present at Fredonia Police Department when Saeli was interviewed and then arrested at 3:40 pm. (Plaintiff's arrest didn't commence until after the interview circa 7:00 pm. Also the representative from the district attorney's office that Schmidt said was present was Andrew Molitor, who Swanson fired in 2018 after my second trial and who Schmidt rehired in 2020 upon becoming D.A. (compare comments made in articles contained in Z1 to Molitor's statement to the court in Exhibit Z concerning the interrogation

P, 49

If anyone ever wanted to investigate a corruption and bribery scandal of a public officer, an investigator would find a hornets nest of corruption and bribery in the Chautauqua County District Attorney's office and between Schmidt and Molitor. Jason Schmidt he posted the arrest report pertaining to this matter, that to this day has never been turned over in discovery. The statements made in these media articles pertaining to Plaintiffs interview and arrest on 8/15/16 at the Fredonia Police Station by Schmidt and Swanson were false, misleading, libelous, slanderous, defamatory and contrary to the truth of the matter and undertaken only to promote and protect the political self interests of Swanson and Schmidt during the 2016 election year. In addition to these false, inflamatory, libelous, slanderous and defamatory made by Swanson at the time these articles were printed, Swanson also made false, libelous, slanderous and defamatory statements about Plaintiff Saeli that Swanson knew were false in August, September and October of 2016 to: ① News Channel 2 in Buffalo, NY found at wgrz.com; ② News Channel 4 at wivb.com; ③ News Channel 7 at wkbw.com; ④ Spectrum News at spectrumnews.com ⑤ the Buffalo News found at buffalonews.com, the observertoday.com and Jamestownpostjournal.com. While Plaintiff Saeli does not have access to the full scope of defendants false statements and coverup to the media due to the conditions of his incarceration, if pleases and is acceptable to the Court, Plaintiff Saeli invites the Court to visit the websites listed above to view and confirm the full extent of Swansons and Schmidts misconduct, coverup, lies, libel, slander and defamation of character they engaged in from 2016- 2024.

Additionally, also contained in Exhibit Z, is the June 2018 observertoday.com article (turned over in the 2024 Discovery process) of the news conference attended by and pictured of defendants Swanson, Artrip, Molitor, Meyers and Price (whom social media commentators dubbed "the corrupt five" in Plaintiff Saeli's case) all engaged in libel, slander and defamation of character of Plaintiff Saeli. Whereas at this news conference, Patrick Swanson announced that "there may be more victims of Samuel Saeli" even though no investigations or charges ever resulted from Swansons comments. Patrick Swanson then urged "victims" to contact the F.B.I and Special Agent Chad Artrip and he falsely stated that they (the F.B.I) have a separate case running, which is absolutely false and again no further charges were ever brought against Plaintiff Saeli. This story, with comments by Molitor, Artrip, Meyers and Price can be found at https://www.observertoday.com/news/top-stories/2018/06/dafabe 2%80%88 there-may-be-more-saeli-victims/ These comments were false, libelous, slanderous, defamatory designed to inflict emotional distress and were contrary to the truth. Additionally, the "importance" and involvement of FBI Special Agent Chad Artrip in this conspiracy and libel, slander and defamation of character of Plaintiff can not be underestimated as he was actively and explicitly involved in, apart of oversaw and condoned these false, slanderous, libelous and defamation statements made regarding his involvement in the FBI "investigation". Therefore, Plaintiff Saeli shall be allowed to pursue a claim of libel, slander, defamation of character and intentional infliction of emotional distress against defendants Swanson, Artrip, Schmidt, Molitor, Meyers and Price as shown in Plaintiff's Exhibit Z, for their comments made to the media and on the websites of wgrz.com; wivb.com; wkbw.com; buffalonews.com; spectrumnews.com; observertoday.com and the Jamestownpostjournal.com. Furthermore, in or about May of 2018, prior to the start of Plaintiff Saeli's second trial, defendant Meyers gave a radio interview with chautauquatoday.com in which he towed the D.A's line of

denying that no such interrogation of Plaintiff Saeli ever occurred, that there were "more victims" and promising to get Saeli at all costs all of which were false, defamatory, libelous and slanderous and contrary to the truth of the matter. Plaintiff Saeli invites the Court to visit: https://chautauquatoday.com/news/details.cfm?clientid=25&id=251692#Wblo 6MzryMB. (the sign after the number 25 is an ampersan, a symbol for "and") for former Chief of Police of the Fredonia Police Department Brad Meyers comments about Plaintiff Saeli's case, all libelous, slanderous, and defamatory and all contrary to the facts of the matter and only brought to Plaintiff Saeli's attention through the 2024 discovery process.

Lastly, defendant Jason Schmidt engaged in libel, slander, and defamation of character of Plaintiff in August, September and October of 2016 (and the full extent only made aware to Plaintiff through the 2024 Discovery Process) and again in September of 2024 through press releases he submitted to the Observertoday.com, jamestownpostjournal, wkbw.com, wivb.com and wgrz.com and the buffalonews.com that was false, libelous, slanderous and defamatory, but not really suprising for an attorney who was criticized and chastised by a federal judge for his conduct in the case of Ultrapak, LLC v. Laninver USA, Inc., 2019 WL 244492. However what is evident from Jason Schmidts conduct from 2016-2024 against Plaintiff Saeli is that for some unknown reason Jason Schmidt holds a personal grudge and vendetta against Plaintiff Saeli which Plaintiff believes originated from an August 28, 2016 Court appearance in the town of Dunkirk Court that Jason Schmidt also attended on an unrelated matter. Even though Plaintiff was already represented by an attorney, Jason Schmidt tried to solicit Plaintiff Saeli's case by explicitly stating at that time that "he knew whose hands to grease to make my cases go away" and for $45,000.00 he could do just that." Although Plaintiff Saeli was handcuffed and seated in an inmates only area, that didn't stop Jason Schmidt from speaking to Saeli who was represented by another attorney and soliciting $45,000.00 from Saeli to "make my case go away." Its obvious to Plaintiff Saeli that Jason Schmidts grudge against Plaintiff Saeli commenced with Saeli's unacceptance of Schmidts bribe offer, which he caused defendant Schmidt to become visably upset and leave the inmate area of the Court, and that began Schmidts personal vendetta and grudge against Plaintiff Saeli that continues to this day. Whereas, after Plaintiffs 2024 trial and conviction Jason Schmidt did release false, slanderous, libelous, and defamatory statements about Plaintiff to ① the observertoday.com ② wkbw.com ③ wgrz.com ④ wivb.com ⑥ Spectrumnews.com ⑦ jamestownpostjournal.com ⑧ buffalonews.com and such statements were contrary to the truth of the matter. However, due to Plaintiff Saeli's present incarceration status, he is unable to print out, view or review the statements that Jason Schmidt made to the media post conviction from June 28, 2024 until September 6, 2024 but Plaintiff invites the Court to review these Comments via the above listed websites for all of the defamatory, inflammatory, libelous, slanderous statements that these defendants made about Plaintiff Saeli, even though they were knowledgeable on the night of the alleged crime, through the alleged victims statements to police and others (see Exhibits M, Z₁, and Z₃) that no crime had been committed by Plaintiff Saeli. Thus, there can be no doubt that these defendants intentionally engaged in libelous, slanderous and defamatory conduct against Plaintiff in order to promote and protect their own self interests and utilized and abused the village of Fredonia New York, Chautauqua County, New York's and the Federal Bureau of Investigations policy and custom of its agents and officers communicating with the public and media, explaining to facilitate inflamatory, defamatory, slanderous and libelous behavior against Plaintiff Saeli and such conduct was in the bounds of these defendants official and individual capacities and a failed part of their administrative and investigative functions of their positions and therefore, Plaintiff Saeli should be allowed to pursue his libel, slander, defamation of character and intentional infliction of emotional distress claims against all defendants as stated herein.

C: What date and approximate time did the events giving rise to your claim(s) occur?


On October 19th 2017, the defendants named here in violated Plaintiff's rights and protections under the Fourth Amendment of the U.S Constitution by applying for and executing a facially deficient and unconstitutional search warrant against Plaintiff. On August 11, 2023, the New York State Appellate Division, Fourth Department ruled that the search warrant was facially deficient and unconstitutional and reversed and vacated defendants 2018 sentence and conviction. (see Exhibits C and H respectively)

The unconstitutional and facially deficient search warrant was applied for to a Court by disgraced Chautauqua County Assistant District Attorney Andrew Molitor (fired from the office in 2018 due to misconduct he committed throughout my case, see Exhibit C) (see also Exhibit K) and executed by (1) Fredonia Police Officer Dave Price; (2) F.B.I Special Agent Chad Artrip; (3) Chautauqua County Corrections Officer Louis Habig and (4) Chautauqua County Lieutenant Jeffrey Grupa, none of whom properly reviewed, read or examined the search warrant to ensure it complied with the Fourth Amendment of the U.S Constitution or pertinent case law, as required of them as part of their duties prior to executing a search warrant.

The unconstitutional search warrant was executed on or about October 19, 2017, more than a year after Plaintiff's original arrest and detention and Plaintiff's first trial, at the Chautauqua County Jail in Mayville, NY. As such, Plaintiff is suing Dave Price, Louis Habig, Jeffrey Grupa and Andrew Molitor in their

¶ 4h
continued

official and individual capacities under the law for violating
Plaintiff's Fourth Amendment rights under the U.S. Constitution
and individually, Plaintiff sues Price, Habig, Molitor, Krupa
for failing to properly perform the administrative and investigative
functions required of them by law and the duties of their position
in executing said deficient search warrant against Plaintiff. Furthermore,
Plaintiff is seeking to sue former Chief of Police of the Fredonia
Police Department Brad Meyers for failing to properly advice and
supervise his officer in the review and execution of the search
warrant, as well as Patrick Swanson, former Chautauqua County
District Attorney, for failing to properly advise and supervise
ADA Andrew Molitor in applying for that search warrant, all
as stated herein, in violation of the administrative and investigative
functions that were required of Swanson as District Attorney. Lastly,
I seek to sue F.B.I. Special agent Chad Artrip in his official
and individual capacity for violating Plaintiff's Fourth Amendment
rights under the US Constitution through his conduct and role in
executing a facially deficient and unconstitutional search warrant
against Plaintiff as a Bivens Claim. (see Exhibit C)
Also, as part of the 2024 discovery process that resulted from the
Fourth Department's August 2023, evidence of libel, slander and
defamation of character of Plaintiff by defendants Swanson and Schmidt
committed in August, September and October of 2016 and by Swanson, Molitor,
Chad Artrip, Brad Meyers, and Dave Price in June of 2018 and again
by Schmidt in 2024 was turned over to Plaintiff. Therefore, Plaintiff
Seeks to sue Swanson, Molitor, Artrip, Meyers, Price and Schmidt for
libel, slander, and defamation of character as stated herein (see Exhibits
2, 2)

Pg 4h
continued

D. What are the facts underlying Your Claims?

On October 19th, 2017 under the direct supervision and advisement of Chautauqua County District Attorney Patrick Swanson, Assistant District Attorney Andrew Molitor applied for a search warrant for Plaintiff's property that did not properly incorporate the search warrant and affidavit, was facially deficient, and violative of the Fourth Amendment under the U.S. Constitution. Under the supervision and advisement of then Fredonia, NY Chief of Police Brad Meyers, Dave Price, in conjunction with Special Agent of the F.B.I Chad Artrip executed the search warrant at the Chautauqua County Jail with and in cooperation with Chautauqua County Jail Correction Officer Louis Habig and Lieutenant Jeffrey Grupa. Whereas, given the Fourth Department's August 11, 2023 Court decision, it is apparent that none of these defendants, upon being presented with and receiving the search warrant ever reviewed or read it, given that based on their education, training and experience, if they had read and reviewed the search warrant, they should have known that it did not comport with the Fourth Amendment requirements under the U.S. Constitution or case law pertinent to the matter. On August 11, 2023, the New York State Supreme Court Appellate Division, Fourth Department ruled that the Search warrant was facially deficient and unconstitutional. (See Exhibits C, I )

Furthermore, as part of the Fourth Department's ruling, the Discovery process for Plaintiff's 2024 retrial began anew. Evidence that defendants Schmidt and Swanson engaged in libel, slander, defamation of character of Plaintiff in August, September and October of 2016 (see Exhibits Z and Z1); Defendant Meyers engaged in slander and

defamation of character of Plaintiff in May of 2018 via radio interview (see https://chautauquatoday.com/news/details.cfm?clientid=25&id=251692#.Wblo6MZ.cy.M8) and defendants Artrip, Molitor, Swanson, Meyers and Artrip engaged in libel, slander and defamation of Plaintiff in a media conference in June of 2018, expressing falsehoods about further victims and further charges (see Exhibit Z1)

V. Injuries: The defendants named herein violated my constitutional rights under the 4th Amendment of the U.S Constitution, Plaintiff was maliciously prosecuted, libeled, slandered, defamed, their media propaganda subjected me to hearsay and as a result my due process rights and right to a fair trial were violated in 2018 and Plaintiff suffered severe emotional distress that he is currently undergoing mental health treatment for, pain, suffering and emotional distress, including but not limited to post traumatic stress disorder, anxiety and depression.

VI Relief: Plaintiff seeks compensatory, monetary, punitive and any other relief/damages available to him under the law in the amount of $21 million dollars and $21 million dollars from Chad Artrip all for the emotional distress, pain, suffering, malicious prosecution, libel, slander, defamation of Plaintiff's character and wrongful conviction/incarceration for over seven years that Plaintiff endured as a result of their conduct.

Current Chautauqua County District Attorney Jason Schmidt and ADA Emily Woodard Violated Plaintiff's rights and protections under the Due Process Clause of the 14th Amendment of the U.S Constitution and neglected their administrative and investigative responsibilities by failing to ensure (1) A speedy trial for Plaintiff in violation of the Sixth Amendment of the U.S Constitution and NYCPL 30.30(1)(a) which requires the People to announce their readiness within six months from the commencement of trial, which is tied to them complying with Discovery timing obligations under NYCPL 245.10, which states in sum and substance that the People have twenty days from the commencement of criminal proceedings, that they have twenty days to over all discovery in their possession. The People's speedy trial obligations under 30.30(1)(a) of the NYCPL is tied to NYCPL 245.20, which states that the People have to file a Certificate of Discovery Compliance with the Court within the six month time frame of 30.30(1)(a) of the NYCPL which list all evidence in the People's possession that it intends to offer at trial as well as all witnesses it intends to call to testify at trial. Whereas, Plaintiff believes that the speedy trial clock began "ticking" on August 11, 2023, when the New York State Supreme Court, Appellate division, Fourth Department, reversed and vacated Petitioner's sentence and conviction. The People foolishly, (to stall for time) attempted to appeal that court's unanimous decision unsuccessfully. However, the People provided no justification on the record for any "reasonable period of delay" under CPL 30.30(4)(a) to be added to the six months under CPL 30.30(1)(b). The People submitted their certificate of Discovery Compliance on March 1, 2024. Given that the criminal proceedings commenced on August 11, 2023, the People had six months to announce their readiness for trial which would have expired on or about February 19th 2024. However, Schmidt and Woodard did not submit their Certificate of Discovery Compliance until March 1, 2024. (See Exhibit Z) Additionally, the certificate of Discovery Compliance omitted evidence (the tape recorded conversation between Fredonia Police officer Michael Hodkin and the alleged victim (See Exhibits M, Z) the Surveillance video from Walmart, as well as the names of testifying witnesses that the government intended to call as witnesses including the alleged victim; Dave Price; Michael Napierala; and Walmart employee Mr. Nero, all who testified at trial but all who were not disclosed in the People's certificate of Discovery Compliance. Based on the belief that the tape recorded conversation would be played at his trial in his defense coupled with the witness list that was disclosed, Plaintiff elected to go to trial for a third time, was told on the Fourth day of trial that the tape recorded conversation no longer existed. Plaintiff was convicted and 3 years were added onto Plaintiff's 16 year sentence as a result. By failing to comply with NYCPL 30.30(1)(a) and the Sixth Amendment of the U.S. Constitution as well as NYCPL 245.10 and NYCPL 245.20, Jason Schmidt failed to (along with Emily Woodard) adequately perform the administrative and investigative functions of their jobs and violated Plaintiff's 6th and 14th Amendment rights under the U.S Constitution as well as Plaintiff's right to a fair trial. Furthermore, during bail proceedings in August and November of 2023, Emily Woodard did lie to the Court in an effort that was successful to deny Plaintiff bail that Plaintiff had been convicted of violating a prison rule (the ticket was dismissed on facility review) a fact she didn't disclose to the Court because she didn't properly investigate the ticket. Emily Woodard also lied

to and deceived the Court during bail hearings by falsely stating that Plaintiff was convicted of a failure to appear before the trial Court and Judge Paul Wojtaszek in 2016 which is false. Never once during Court proceedings from 2016-2018 was their ever any discussion on or off the record, let alone a conviction of failure to appear before the Court. This was a lie, Plaintiff has never failed to appear in any criminal matter, Emily Woodard deliberately lied to and deceived the Court about this and had she adequately performed her administrative and investigative duties pertaining to this matter, she would have known that Plaintiff had never been convicted of a failure to appear. But Emily Woodard's lies pertaining to the ultimately dismissed prison ticket (which she never knew or presented as dismissed) and the false statements she made pertaining to a failure to appear that never happend, as Plaintiff was denied bail upon successful appeal.

As a result of Chautauqua County District Attorney Jason Schmidt's and Emily Woodards failure to perform the administrative and investigative functions of their jobs/positions, Plaintiff was prejudiced at trial, and his right to a speedy trial under the Sixth Amendment of the U.S Constitution, his due process rights under the 14th Amendment of the U.S. Constitution and his right to a fair trial were violated by Schmidt and Woodard. Additionally Emily Woodard's lies and failure to adequately perform her administrative and investigative functions of her job during the bail hearings, unfairly prejudiced Plaintiff and denied him bail. Therefore, Schmidt and Woodard should be held liable for the violations they committed against Plaintiff by failing to properly carry out    the administrative and investigative functions of their positions. Lastly, their dereliction of duties relating to their administrative and investigative functions of their positions, denied Plaintiff a fair trial, resulted in an unfair conviction and further libel, slander, and defamation of character committed against Plaintiff by Jason Schmidt via his press releases to the media after conviction.

V. <u>Injuries</u>: As a result, Plaintiff's statutory, civil and constitutional rights were violated; Plaintiff was denied his sixth amendment right to a speedy trial, his 14th Amendment due Process Rights his rights and protections against malicious prosecution and wrongful incarceration were violated, his right to a fair trial was violated, Plaintiff endured Pain and Suffering and emotional distress as a result of their actions and Plaintiff was furthered libeled, slandered, and defamed by Jason Schmidt as a result through his press releases on the matter. And if the Court should have any concern as to the integrity or lack thereof of Jason Schmidt as an attorney, I would refer the Court to the case of Ultrapak, LLC vs Larimer USA, 2019 WL 244492.

VI: Relief: Plaintiff seeks compensatory, monetary, punitive and any other relief /damages available to him under the law from Chautauqua County District Attorney Jason Schmidt and Assistant District Attorney Emily Woodard. As a result of their violating my civil rights and Sixth and 14th Amendment rights of the U.S Constitution and failing to properly perform the administrative and investigative functions of their positions relating to Discovery and bail, which affected Plaintiff's right to a fair trial and due to the fact that Plaintiff was further libeled, slandered and defamed by Jason Schmidt; Plaintiff seeks $30 million dollars in damages from Jason Schmidt and $21 million dollars in damages from Emily Woodard.

Continued:   Pg 4K

C: What date and approximate time did the events giving rise to your claims occur?

On or about August 15, 2016 at or about 10:30pm, Fredonia Police Officer Michael Napierela left his authorized jurisdiction of Fredonia, N.Y and drove to Plaintiff's house in Dunkirk, N.Y and obtained the license plate number of a vehicle parked in the driveway, (see Exhibit Z₂) and noted the year, make and model of the car, at 10:30 p.m at night. Whereas, the only way Mr. Napierela would have been able to obtain that information in the dark would be for him to jump a fence and gate that was present at the time separating the driveway from the road, enter onto Plaintiff's property without a search warrant and without permission, open a car door to a vehicle on the property and removed a vehicle dash camera. This was captured on a home video surveillance camera and amounted to an illegal search and seizure of Plaintiff's Fourth Amendment rights and protections under the U.S. Constitution, and since this dash cam recorded information that was exculpatory to the crimes charged, a violation of my due process rights and right to a fair trial, as much like the exculpatory tape recording documented in Exhibit Z₁ magically disappeared. However, prior to Plaintiff's 2017 and 2018 trials, ADA Andrew Molitor denied that any members of law enforcement were ever at Plaintiff's house on the night of the alleged crime. In May of 2024, as part of the discovery process in Plaintiff's criminal trial, the government turned over a police report authored by Michael Napierela and that was previously undisclosed confirming that Michael Napierela was indeed at Plaintiff's house on the night of the alleged crime conducting

Continued: Pg 4K

an unauthorized, illegal and unconstitutional search of Plaintiff's property and proving that Andrew Molitor's previous statements to the Court, that as an officer of the Court, I can tell you no members of law enforcement were at Plaintiff's house on the night of the alleged crime was a complete and total lie by Molitor.

   This illegal and unconstitutional search conducted by Michael Napierela on August 15, 2016 at or about 10:30 p.m (see Exhibit $Z_2$) is completely separate and distinct from the unconstitutional search and seizure conducted on October 19th 2017. Michael Napierela's conduct amounted to an illegal search and seizure and violated Plaintiffs rights and protections under the Fourth Amendment of the U.S constitution.


V. Injuries: Fredonia Police Officer Michael Napierela violated my civil rights and protections guaranteed under the New York State and U.S Constitution as well as Plaintiff's constitutional rights and protections under the Fourth and Fourteenth Amendments under the U.S. Constitution. As a result of Michael Napierela's actions and conduct, exculpatory evidence was not properly documented and recorded (much like the exculpatory evidence of the tape recording documented in Exhibit $Z_1$ wasn't properly documented and recorded) and was suppressed from and prevented from being offered into evidence at all three of Plaintiff's trials and Plaintiff was maliciously prosecuted and wrongfully incarcerated as a result, endured pain, suffering, loss of contact with family and suffered extreme emotional distress that Plaintiff currently seeks treatment for. This is a 42 USC 1983 civil rights complaint seeking compensation against Michael Napierela for injuries he caused Plaintiff in his official and individual capacity.

Continued: Pg 4k

Officer Michael Napierela violated Plaintiff's civil and constitutional rights under New York and U.S. Federal law and Plaintiff's constitutional rights as stated herein and neglected his administrative and investigative functions of his position by conducting an illegal search of Plaintiff's property on August 15, 2016 without first seeking a search warrant or Plaintiff's permission to enter onto Plaintiff's property and conduct such a search and failing to properly document, preserve and disclose any and all exculpatory evidence he seized on August 15, 2016. (see Exhibit Z2)

VI: Relief: Plaintiff seeks compensatory, monetary, punitive and any other relief/damages available to him under the law from Fredonia Police Officer Michael Napierela in the amount of $21 million dollars. Whereas, as a result of Michael Napierela violating Plaintiff's civil and constitutional rights as stated herein, and Michael Napierela neglecting and failing to adequately perform the administrative and investigative functions of his position as a police officer in failing to document, preserve, and disclose exculpatory evidence and his role in suppressing that evidence and in his conducting an illegal search and seizure of Plaintiff's property without a search warrant or permission from Plaintiff to conduct such a search, Plaintiff's civil and constitutional rights and protections under New York State and U.S Federal laws and constitutions were violated, Plaintiff was maliciously prosecuted, libeled, slandered, defamed, wrongfully incarcerated and suffered extreme emotional distress that he still seeks treatment for as a result. Plaintiff seeks compensatory monetary and punitive damages from Michael Napierela in the amount of $21 million dollars.

## False Arrest and False Imprisonment

Plaintiff became detained pursuant to the legal process on or about August 15, 2016. Upon arrest, Plaintiff posted bail, was rearrested on or about August 17, 2016 upon indictment and held without bail. Plaintiff was in continuous custody from August 17, 2016 to the date of this motion. The New York State Supreme Court, Appellate Division, Fourth Department reversed and vacated Plaintiff's 2018 conviction and sentence on August 11, 2023, resolving the proceedings from 2016-2018 in Plaintiff's favor. Plaintiff believes that the August 11, 2023 decision reversing and vacating Plaintiff's 2018 conviction began anew the criminal proceedings against Plaintiff. In 2018, Plaintiff was convicted both of Kidnapping in the 2d degree and Kidnapping as a sexually motivated felony. In 2024, Plaintiff was convicted only of the Kidnapping as a sexually motivated felony. Upon arrest on August 15, 2016, Plaintiff was only charged with Attempted Kidnapping in the 2nd degree. (see Exhibit Z₁)

Additionally, the question that Plaintiff puts before the Court regarding false arrest (besides the Attempted Kidnapping in the 2nd degree and the Kidnapping in the 2nd degree being successfully resolved in Plaintiff's favor is that if Plaintiff was arrested without probable cause (i.e that being the alleged victim telling two government witnesses Fredonia Police Officer Michael Hadkin and Elyse Mead that he walked from Walmart and the government knew this information on the night of the alleged crime, see Exhibits M & Z₂ thus negating any Kidnapping charge) and Plaintiff was incarcerated from August 15, 2016 until

the criminal process began anew on August 11, 2023, doesn't the NYS Supreme Court ruling support that Plaintiff was falsely imprisoned from the day of Plaintiff's arrest on August 15, 2016 until the criminal process began anew on August 11, 2023? Plaintiff believes that given the ruling of the Fourth Department (see Exhibit I) that Plaintiff's arrest and imprisonment from August 15, 2016 until August 11, 2023 is separate and distinct (and resolved in Plaintiff's favor) from any criminal proceedings, trial, and sentence that occurred in 2024 and therefore from August 15, 2016 until August 11, 2023, Plaintiff was falsely arrested and imprisoned during that time? A new criminal process thus began on August 11, 2023 that was separate and distinct from the criminal process' in 2016-2018. Additionally, therefore, the statute of limitations on Plaintiff's false arrest and imprisonment claims should be tolled until August 11, 2023. Lastly, based on the facts stated herein, defendant Maslak did falsely arrest Plaintiff on August 15, 2016 (see Exhibit Z) especially given the promise not to charge Plaintiff criminally based on the alleged victim's statement the night of the alleged crime in exchange for Plaintiff being interviewed about the matter made by Molitor and Meyers?

## Failure to Train and Monell Liability

Plaintiff was subject to unlawful arrest and illegal, unconstitutional search and seizure that lacked probable cause and were the result of deficient policies and procedure, lack of oversight in ensuring that whatever policies and procedures pertaining to a suspect were followed

and lack of training and education of its officers. Fredonia Police Chief Brad Meyers' and investigator Dave Price's deliberate disregard of the law and constitution (as well as Court rulings pertaining to search warrants and search and seizure by the Second Circuit) as well as there blatant disregard of NYCPL Sect 60.45 requiring the documentation and recording of police interviews and interrogations, as well as Meyers', Price's and Napierela's failure to preserve exculpatory evidence as part of plaintiff's criminal case (i.e the vehicle dash cam taken by Napierela on the night of the alleged crime, see Exhibit $Z_2$ as well as the tape recorded conversation between Fredonia Police Officer Michael Hodkin and the alleged victim, see Exhibit $Z_1$ and compare to discovery disclosures in Exhibit $Z_4$). Michael Napierela's conduct on the night of the alleged crime amounted to an illegal, unconstitutional search because the vehicle information he obtained while at Plaintiff's could only be obtained by him jumping over a gate and walking up the driveway and into the car on the property as shown on home security surveillance. Afterall, if Napierela was part of the "kidnapping" investigation and he was at my house on the night of the alleged crime (see Exhibit $Z_2$ for Napierelds report) why didn't he just knock on the door and ask Plaintiff "hey can you tell us what happend?" The reason why he was at Plaintiff's property and didn't knock on the door was because Napierela was conducting an illegal search. This conduct supports defendant's blatant disregard for Plaintiff's statutdory, civil and constitutional rights and protections, but also the Village of Fredonia's deficient training also amounts to deliberate indifference to Plaintiff's rights and also any other person defendants may come in contact with.

Furthermore, when asked at Plaintiff's trial what kind of training
Dave Price underwent as a Fredonia Police officer, its very telling
that he only refers to "blood born pathogens" and "sexual harassment
training" as it illustrates that the Village of Fredonia provides
no training and/or inadequate training pertaining the statutory,
civil, and constitutional rights of Plaintiff and others whom
defendants and other officers of the Fredonia Police Department
come into contact with.

The specific deficiency in the Village of Fredonia New
York's police officer training program lies in the fact that aside
from training for blood born pathogens and sexual harassment,
their is no training and education for officers pertaining to the
execution of search warrants to ensure that its officers
are in compliance with the law, the constitution and case
law precedent; that type of training, according to Dave Price's
testimony is non existent at the Fredonia Police Department or
to the extent that there is a cursory existence of such training,
it was obviously deficient, lacked oversight and not followed
pertaining to Plaintiff's case and the same is true for
Chautauqua County, N.Y.

Plaintiff does seek review of the Village of Fredonia, N.Y policies and procedures and training manualse relating to its education and training of its officers pertaining to media interviews, press releases and its officers commenting on criminal cases as in place in 2016-2018 as well as its policies and procedures pertaining to the review and execution of search warrants and the documentation and preservation of all evidence in a criminal case. Plaintiff did request this information from the Village of Fredonia, NY through a 2023 FOIL request prior to filing the original complaint in this matter, with no response being received as of yet. Plaintiff maintains that the Village of Fredonia, N.Y. policies, procedures and training manuals are applied in a biased discriminatory manner towards Plaintiff and are insufficient to properly train officers to protect Plaintiff and other citizens' civil and constitutional rights as there is no other reasonable explanation as to how Brad Meyers, Chief of Police, failed in his review and advisement of the search warrant executed by his underling Dave Price and to recognize the fact that the search warrant was deficient on its face and in its facts and didn't comply with the law and the facts of the matter, nor is there a reasonable explanation as to how Dave Price failed to recognize that the search warrant was facially deficient and unconstitutional except to say that they were motivated by animus toward Plaintiff and that their training and education programs are deficient regarding the execution and review of search warrants as implemented by the Village of Fredonia, NY.

Plaintiff believes that Meyers' and Prices' conduct in reviewing and executing the unconstitutional search warrant against Plaintiff

was motivated by personal animus and was the result of inadequate, education and training in such matters by the Village of Fredonia, N.Y. Therefore, Plaintiff seeks and requests to review the training program and manuals that the Village of Fredonia, NY provides to its police officers as well as the Fredonia Police Department's General Orders and police training records of all its officers from 2016-2018 as review of those records will assist the Court in determining the adequacy, deficiencies, and omissions of the Village of Fredonia N.Y.'s training policy/program and how that contributed to defendants Meyers and Price violating Plaintiff's civil and constitutional rights under the Fourth Amendment of the U.S constitution.

Plaintiff also seeks review of Chautauqua County New York's and the Federal Bureau of Investigation's (F.B.I) policies and procedures and training manuals to determine if former Chautauqua County District Attorney Patrick Swanson, Assistant District Attorney Andrew Molitor, F.B.I special agent Chad Artrip, Chautauqua County Correction Officer Louis Habig and Lieutenant of the Chautauqua County Jail Jeffrey brup followed the appropriate policies, training, and education of their respected jurisdictions in reviewing and advising their respected officers and attorneys in the execution of the facially deficient and unconstitutional search warrant in violation of Plaintiff's Fourth Amendment's rights and protections under the U.S. Constitution.

Plaintiff maintains that Chautauqua County New York's and the F.B.I's policies and procedures and training offered to its officers are insufficient to properly train officers/agents

to protect Plaintiff's (and other Citizen's) civil and constitutional
as there is no other reasonable explanation as to how defendants
Swanson's, Molitor's, Artrip's, Habig's and brupa's failed in their
review, advisement and execution of the facially deficient
unconstitutional search warrant and failed to recognize the fact
that the search warrant was deficient on its face and didn't
comply with the Fourth Amendment of the U.S. Constitution and
judicial case law, nor is there a reasonable explanation as to
how Swanson, Molitor, Artrip, Habig and brupa failed in their review,
advisement and execution of the facially deficient, unconstitutional
search warrant or how they failed to recognize that the search
warrant was deficient on its face and facts and didn't comply
with the law except to say that their training and education programs
(as they were in 2017) were deficient, not followed, or non existent
regarding search warrants, the law on search warrants and the
execution of search warrants. Therefore, Plaintiff seeks and
requests an order from this Court to obtain copies of training
and educational programs and manuals of Fredonia, N.Y, Chautauqua
County, N.Y and the F.B.I pertaining to the training of its officers
and agents as review of those records will assist the Court in
its review of specific policies and  training that contributed to
the civil and constitutional violations that the defendants named
herein committed against Plaintiff and in violating his Fourth
Amendment rights under the U.S. Constitution.

Therefore, the Village of Fredonia N.Y's policy of training its officers and lack of focus and deficiency on ① ensuring that search warrants its officers execute comport with the requirements of the 4th Amendment of the U.S. Constitution and Court case law ② preserving and documenting things of an evidentiary nature such as police interviews/interrogations and exculpatory evidence illustrates that the training its officers receive regarding these matters are so lacking, deficient and non-existence, causing a violation of Plaintiff's 4th and 14th Amendment rights under the U.S. Constitution          and amounts to deliberate indifference to the Constitutional rights of Plaintiff, as had Defendants Price, Meyers, Hodkin and Napierela been adequately trained and educated on the law and their administrative and investigative functions of their position, Meyers and Price never would have sought to enforce a facially deficient and unconstitutional search warrant that violated the 4th Amendment rights of Plaintiff, but they also would have had the knowledge, education and training to preserve and document the police interview that occurred in this matter on or about August 16, 2016 as well as exculpatory evidence that was in their possession including but not limited to the vehicle dash cam taken by Officer Napierela during his illegal search of Plaintiff's property on the night of the alleged crime on August 15, 2016 as well as the tape recorded conversation between Officer Michael Hodkin and the alleged victim on August 15, 2016 that was exculpatory in nature and disappeared, most likely because it was exculpatory in nature. (See Exhibit #3).

The same goes for Chautauqua County N.Y and the F.B.I. Patrick Swenson, Andrew Molitor and Chad Artrip are either required, by the nature of their law enforcement position to either undergo ongoing training concerning police policies, procedures and the law,      in which they were knowledgeable of the constitutional and case law requirements of a search warrant and blatantly disregarded that training to enforce an unconstitutional search warrant against Plaintiff for animus reasons or they were provided no training by the County and the F.B.I concerning these matters, in which case they were negligent, but no matter how their policy is viewed by the Court on this matter, it is painfully obvious that the defendant's named herein all acted with a deliberate indifference to Plaintiff's Civil and Constitutional rights afforded to him by the U.S. Constitution

Lastly, Plaintiff challenges the assertion that these issues are time barred. Given the New York State Supreme Court, Appellate Division's, Fourth Department ruling on August 11, 2023 the statute of limitations should be tolled as of that date because that was when Plaintiff became knowledgeable of the unconstitutional conduct of the defendants named herein that was committed against Plaintiff, and it was until the discovery process of 2024 was complete that the Plaintiff was given the documentary evidence including but not limited to trial transcripts to support his claim stated herein.

Therefore, for the civil and Constitutional violations resulting from the failed policies and customs of the village of Fredonia, Plaintiff seeks $21 million dollars in damages; from Chautauqua County, N.Y Plaintiff seeks $21 million dollars and from the F.B.I/ United States Government, Plaintiff seeks $21 million dollars.

Pg 5

## Statement of Claim(s) Overview

The claims stated herein are based on defendant's violations of Plaintiff's civil, constitutional and statutory rights under the law (pg. 5 through pg. 6). Specifically, claim one states that the defendants herein named violated Petitioner's rights under the Fourth Amendment of the U.S. Constitution protecting against illegal search and seizure; (Exhibit H) the Fourteenth Amendment of the U.S Constitution ensuring due process and equal protection under the law; false arrest given Defendant's Meyers, Price, and Molitor's knowledge of statements the alleged victim made to two different government witness, (see Exhibits Z, M) at two seperate times on the night of the alleged crime that he had walked from the location he was at to the location he was found at by the police, thus negating any kidnapping charge, therefore because of the alleged victim's statements to these two witnesses, one of which was Fredonia Police Officer Michael Hodkin, the arrest of Plaintiff was not supported by probable cause. Furthermore, those statements were deliberately withheld and suppressed from the Grand Jury, giving rise to not only a claim of Fourth Amendment violation for the facts stated above, but also to a violation of the Fourteenth Amendment. Furthermore, defendant's Meyers and Molitor's willfully and deliberately violated NYCPL 60.45 by failing to record the interrogation that those defendants conducted with Plaintiff the day after the alleged crime and for the ensuing incarceration of Plaintiff for over seven years (5th and 14th Amendment violation; and failure of Defendants to protect Plaintiff from willful and deliberate violations of civil, constitutional and statutory rights and protections. These law enforcement officers acted under the color of state and federal law and deprived Plaintiff of rights, privileges, protections or immunity

Pg 6

secured by the Constitution or laws of the United States.

### Fourth Amendment Illegal Search and Seizure Claim

As stated herein, Defendants Price, Artrip, Habig, and Drupa and Mohtor conducted an illegal search and seizure of Plaintiff's property through a defective and facially deficient search warrant. Whereas, given the New York State Supreme Court, Appellate Division, Fourth Department's August 11, 2023 decision (see Exhibit I) in executing a facially deficient search warrant, the defendant officers' actions were unreasonable and given the Fourth Amendment's significance in our society and Courts, Plaintiff's private interest in the property searched and seized superseded the government's interest. (See Exhibit B)

Wherefore, it is well established that a warrant deficient on its face is invalid and unconstitutional. Whereas, as determined by the New York Supreme Court, Appellate Division, Fourth Department, the search warrant in this matter was facially deficient and invalid, and thus the search of Plaintiff's property was unreasonable. Wherefore, the warrant failed to comply with the particularity requirement of the 4th Amendment; the warrant failed to properly incorporate supporting affidavits and was not restricted by reference to any crime; by not adequately describing the items to be seized and searched with any particularity, the search of Plaintiff's phone should be regarded as "warrantless" and search and seizure of property without a warrant is presumptively unreasonable. Therefore, given the strong Constitutional support and importance for the Fourth Amendment by Society and the Courts, the property searched and seized, a Plaintiff's private interests therein superseded the government's interest and there was a violation of Plaintiff's Fourth Amendment rights and protections under the U.S. Constitution (see Exhibit I)

Pg 8

probable cause and given the alleged victim's statements to Fredonia
Police officer Michael Hodkin on the night of the alleged crime that
he walked and given the promise that Meyers and Moliter made to
Plaintiff that he wouldn't be charged with a crime in exchange for
his statement, Plaintiff never should have been arrested or charged
with any crime. Furthermore, in regards to this issue, Defendants
Moliter and Swanson failed to adequately perform their administrative
and Investigative functions and duties of their job by the facts
stated herein and by failing to properly advise Defendants Meyers
and Maslak (neither of whome was called as a witness by Molitor or
Swanson at either of Plaintiffs trial in further coverup of their wrong
doing) about the statements of the alleged victim given the night before
and regarding the promise Moliter made to Plaintiff not to charge him
based on the alleged victim's exculpatory statements in exchange for Plaintiffs
statement on the matter in light of the subsequent charge placed against
Plaintiff by Philip Maslak, who commenced Plaintiffs false arrest, given the lack of probable
cause and promise made to
Plaintiff
    Furthermore, it is evident that Defendant Meyers, Maslak, Molitor and
Swanson (given the subsequent charges, denial of bail and two criminal ~~to~~ trials
that these Defendants did intend to confine Plaintiff and Plaintiff was In
fact confined in jail and prison since August 16, 2016 and for the next
subsequent seven years; Additionally, Plaintiff was conscious of the
unjust confinement since day one of his incarceration and as a result
of this unjust confinement, Plaintiff suffered Physical injuries, mental
health injuries and Plaintiff did not and would not ever consent
to such confinement and the confinement was not based on probable cause,
was not otherwise privileged, but was also malicious due to the more than
two year cover up, lies and denials to the public and the Court about this Interrogation
by defendants.

Pg 10

into these criminal matter (including Mditors false accusation that more victims were out there and further criminal charges pending) and their conduct at trial should be viewed by this Court as arbitrary, extreme and egregious and oppressive to Plaintiff's U.S. Constitutional rights and protections. There can be no doubt that Defendant's conduct throughout their investigations of Plaintiff, in executing an unconstitutional search warrant; in their participation and knowledge of an off the record interrogation of Plaintiff that they lied about and covered up for two years before Mditor finally admitted the truth and that occurred in violation of NYCPL 60.45 and their conduct and perjurious statements at trial and to and in the media was arbitrary and should shock the consciences of the Court. Whereas, these Defendants did act under the color of state law and deprived Plaintiff of his U.S. Constitutional rights and protections under the Fourth and Fourteenth Amendments of the U.S. Constitution.

(2009 WL 2876288) and Pierce v. Ottaway (2009 WL 749862)

Finally, FBI agent Chad Artrip was on notice of how to and how not to properly execute a search warrant both through prior claims against the FBI (see Exhibits J,L,O,P,Q,X) and official F.B.I. policy. Therefore, Defendants Price, Meyers and Molitor (Fredonia Defendants), Habig and brupa (county Defendants) and Chad Artrip (FBI defendant) failed to ensure Plaintiff was treated equally under the law regarding the false arrest of Plaintiff (which Meyers, Molitor, Maslak and Swanson all participated in) and in executing an illegal and unconstitutional search warrant against Plaintiffs property that Defendants Price, Molitor, Swanson, Artrip and Habig and brupa participated in. Whereas, given the facts stated herein that Defendants Meyers, Molitor, Swanson had in their possession and knowledge of the alleged victim's exculpatory statements of the alleged victim that he walked coupled with the promise Meyers and Molitor made to Plaintiff in an undocumented interrogation and the subsequent two year coverup of it is proof that Defendants Meyers, Molitor, Swanson, and Maslak did effectuate a knowingly false arrest, and failed to treat Plaintiff equally under the law. Given these facts stated herein, their can be no doubt that Defendants failed to treat Plaintiff equally under the law and different from similarly situated individuals and there was no rational basis for the difference in treatment aside from the fact that during Plaintiff's arrest and trial, Molitor and Swanson were desperate to promote and protect their own self interests during an election year campaign.

In regards to the search warrant, the Fourth Amendment requires particularity, incorporation of supporting documents into the search warrant, facial validity and reasonableness not only in the initial search and seizure but also in the manner and scope of searches and seizures are carried out. Therefore, there can be no doubt, especially in considering the New York State

Whereas, due to actions by then candidate for the Chautauqua County District Attorneys office Jason Schmidt, Schmidt publicly disclosed to the public via press releases and posts on his own personal social media page via Facebook that Defendants were lying about the interrogation between them and Plaintiff, Andrew Molitor and Patrick Swanson did disclose to the public via press releases and media interviews and social media posts on Swanson's Facebook page false and misleading statements to the Public denying that any such interrogation ever occurred between members of the D.A office the Fredonia Police Department and Plaintiff. Schmidt then dispatched his campaign manager Tom Tarpley to investigate, who through FOIL requests proved that the interrogation did in fact occur. Meyers, Molitor and Swanson persisted for two years and through Plaintiff's first trial with their lies, fraud and coverup of the interrogation, insisting that no such interrogation occurred. Then at the start of Plaintiff's second trial finally admitted that an interrogation occurred and he was in fact present for it. (the newspaper articles, Swanson's denials and interviews on the matter, Jason Schmidt and his Facebook posts and posting on the FOIL documents and the transcripts of Molitor's admission, exist but Plaintiff currently doesn't have access to them due to his present incarceration after the Appeal So Plaintiff respectfully requests that this Court allow him to obtain these documents through the Discovery process). However, based on the discussions that occurred during that interrogation, Plaintiff conducted Google searches based on the information/questions Meyers and Molitor provided and asked. Those subsequent Google searches were then introduced at trial against Plaintiff as "evidence of consciousness of guilt." Whereas, NYCPL Sect. 60.45(1)(2)(b)(i)(ii)(a) (see Exhibit __Y__) Defendants Meyers, Molitor and Maslak did violate NYCPL Sect 60.45 by failing to record such interrogation

Pg 16

### Fourteenth Amendment Failure to Protect Claim:-

Whereas, all Defendants named herein, knew or should have known of the serious risk and consequences that their conduct and actions posed to Plaintiff including but not limited to false arrest and illegal search and seizure, malicious prosecution and other statutory and constitutional violations. These violations that occurred resulted from Defendants conduct as detailed herein were sufficiently serious to constitute objective deprivations of Plaintiffs rights to Due Process, false arrest and illegal search and seizure and Defendants knew that their actions and conduct posed an unreasonable risk of serious harm to Plaintiff's freedom, constitutional and statutory rights and protections and to Plaintiff's financial earnings and his physical and mental health.

Specifically, regarding the August 15, 2016 police interview/investigation that was commenced on August 15, 2016 by then Fredonia Police Chief Brad Meyers and Chautauqua County ADA Andrew Molitor which was premised on the promisenot to prosecute Plaintiff given the alleged victims statements he made to Fredonia Police Officers Michael Napierala and Michael Hadkin that he walked (see Exhibits Z₃, M ) Brad Meyers and Andrew Molitor failed to protect Plaintiff from false arrest by Fredonia Police officer Philip Maslak, who inexplicably charged Plaintiff with violating NYCPL 135.20(attempt) after Meyers and Molitor left and said I was free to go. Additionally, Meyers and Molitor failed to protect Plaintiff from false arrest without probable cause based on their knowledge that the alleged victim told officers he walked the night of the alleged crime Meyers and Molitor also failed to protect Plaintiff from the lies, libel, slander, defamation of character and cover up that would ensue from their misconduct. (see Exhibits Z, Z₁, Z₂, & Z₃). Lastly, defendant's Meyers and Patrick Swanson failed to protect Plaintiff from defendant's Price, Molitor, Artrip, Habig and Grupa from executing a facially deficient search warrant in violation of Plaintiffs 14th Amendment rights under the U.S. Constitution.



Pg 18

the corrupt prosecutor in Plaintiffs criminal matter, Andrew Molitor being fired for prosecutorial misconduct on my County Court case. His firing occurred immediately after Plaintiffs second trial ended but before sentencing and the resentencing that occurred. Subsequently, that former prosecutor after being fired from the D.A's office was then employed by Plaintiffs trial attorney and then by the Chautauqua County Public Defenders office before then being rehired by the newly elected District Attorney of Chautauqua County. However, as of November , 9, 2024 no determination has been made by the Court as to who can represent Plaintiff in the County Court matter. However, on September 16, 2023 I was told that the public defenders office will most likely represent Plaintiff (despite the conflict of interest) and that to protect my rights and interests over the search warrant issue, in light of the Fourth Departments decision, that I should file a grievance at the jail (where Plaintiff is currently residing) over the search warrant since it was executed at the jail in 2017 and the jail officials should have known the warrant was facially deficient and file a 42 U.S.C 1983 prisoner complaint

(4)      Due to the conflict of interest issues being unresolved, Plaintiff is proceeding pro se in this matter. Additionally, on November , 1st, 2023 (after the original grievance was filed in this matter) Plaintiff learned the names of the Chautauqua County Jail officials who originally executed the warrant and subsequently testified at Plaintiffs second trial were correction officers Louis Habig and Lieutenant Jeffrey Grupa. However, I have attempted to reach out to the trial attorney in that matter (Andrew Brautigam) to obtain a copy of the search warrant and the transcripts of the officer's trial testimony and as of November , 9, 2024 he has not responded to my request.

(5)    As such, if this Court should find any portion of this claim deficient due to Plaintiffs inability to obtain a copy of those documents and transcripts, Plaintiff respectfully requests that this Court grant Plaintiff an extension

(continued From Page 5 First Claim)  Pg 20

Upon obtaining the search warrant, Dave Price then took the warrant
to the Chautauqua County Jail, produced it to correction officer Louis
Habig and Lieutenant Jeffrey Grupa, both of whom reviewed the warrant
and gave the phone to Dave Price, finding no defects to the warrant based
on their knowledge, experience, education and training as correction officers.
(See Exhibits B and C for the testimony of Price and Artrip and Exhibits
D and E respectively for the testimony of Habig and Grupa). Dave
Price then executed the search of that Samsung balaxy cell phone
with F.B.I Special Agent Chad Artrip, where they took the phone to F.B.I
headquarters in Buffalo, N.Y. Chad Artrip then reviewed the warrant and
based on his knowledge, experience, education and training with the Federal
Bureau of Investigations found no defects with the warrant and utilized a
computer software program called Cellebrite. Using the cellebrite software,
Agent Artrip then conducted a general search for "all digital and electronic"
data contained on the phone- (see Exhibit C).

(6) On or about the date of May 2018, the trial court, NYS Supreme Court,
Chautauqua County, under judge Paul Wojtaszek conducted a hearing
concerning the search warrant and it's validity. Plaintiff's defense counsel
objected to the search warrant in writing as being in violation of the
Fourth Amendment of the U.S. constitution for it being facially deficient
and not particularized (see Exhibit I). The trial the erroneously admitted
the evidence produced from the search warrant at trial. Plaintiff was subsequently
convicted of the charges at the second trial and sentenced to 16 years in New
York State prison. From August 2016 to about September of 2018, Plaintiff
remained in local county custody of the Chautauqua County Jail where he remains
as of this filing. About around September 2018 until August 23, 2023 Plaintiff
was held in state custody under the New York State Department of Corrections and
Community Supervision (NYSDOCCS) custody and control. During the


Pg 22

Covid-19 pandemic, state, trial and appeal court matters were shutdown. Plaintiff's appeal of his criminal convictions was prepared and perfected by John Cirando in January of 2023. (See Exhibit H).

The New York State Supreme Court Appellate Division, Fourth Department, heard oral arguments on Plaintiff's appeal (focusing on the issue of the search warrant) on May 15, 2023. On August 11, 2023, the Appellate Court ruled that the search warrant was "facially deficient" stating in part "the search warrant simply stated that the police were directed to search defendant's cellular phone for all "digital and/or electronic data" from August 13, 2016 to August 15, 2016." The warrant contained no language incorporating any other documents or facts. Significantly, the search of the phone was not restricted by reference to any particular crime. Thus, the search warrant failed to meet the particularity requirement and left discretion of the search to executing officers. (See Exhibit I) All these issues related to the search warrant were somehow conveniently overlooked and missed by the highly educated and well trained officers of Price, Artrip, Habig and Grupa. As a result, Plaintiff's conviction was reversed and sentence vacated. Plaintiff was then transferred from state custody to county custody on August 23, 2023.

⑦ . Wherefore, it is incumbent on the officers executing a search warrant to ensure the search is lawfully authorized and lawfully conducted. (Groh v. Ramirez, exhibit J). The judge's authorization of the search did not render it constitutional because the warrant's obvious deficiency required the Court to consider the search warrantless and presumptively unreasonable. Neither Price, Artrip, Habig or Grupa are entitled to qualified immunity because no reasonable officer could have believed that a warrant that plainly did not comply with the Fourth Amendment's particularity requirement was valid nor been unaware of the basic rule that absent consent or exigency (neither of which occurred or was present in Plaintiff's circumstances) a warrantless search was presumptively unconstitutional (Groh v. Ramirez 540 U.S. 551)

Pg 24



or been unaware of the basic rule that absent consent or exigency, a warrantless search was presumptively unconstitutional.

(8)   Whereas, the Fourth Amendment states unambiguously that no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. (See Exhibit J). Furthermore, as apparent in the Appellate Division's decision, the fact that a warrant application adequately describes the things to be seized does not save the warrant from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. And for good reason: The presence of a search warrant serves a high function and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for its inspection. The Fourth Amendment does not forbid a warrant from cross referencing other documents. The warrant, however, has to use appropriate words of incorporation (which was not done in Plaintiff's case) and if the supporting documents accompanies the warrant (also not done in Plaintiff's case). The presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant. Furthermore, the uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.

(9)   Additionally, it should be incumbent on the officer(s) executing a search warrant to ensure the search is lawfully authorized and lawfully conducted and neither Defendants Louis Habig, Jeffrey brупа nor Dave Price and Chad Artrip ensured that the search of Plaintiff's phone was lawfully authorized and lawfully conducted.



everything and anything on the phone, leaving discretion to Defendants Price and Artrip to pick and choose what evidence they wanted to use against Plaintiff at trial. The warrant contained no language incorporating any other documents or facts. Significantly, the warrant to search the phone was not restricted by reference to a particular crime. Thus, the search warrant failed to meet the particularity requirement and left discretion to the executing officers. While the search warrant application contained information about the crime, the search warrant application was not incorporated into the search warrant and therefore, did not save the warrant from facial invalidity.

(11)    Dave Price, along with F.B.I agent Chad Artrip then took the search warrant (without reviewing it to ensure that the warrant was valid under the requirements of the Fourth Amendment of the U.S. Constitution that they should have done given their background, training and expertise) and presented it to correction officers Louis Habiy and Jeffrey Brupa (who given their background, training and expertise, should have, but didn't review the search warrant to ensure that the warrant was valid under the requirements of the Fourth Amendment of the U.S. Constitution and Habig and brupa then obtained the phone and turned it over to Price and Artrip. Price and Artrip then took the phone to the F.B.I offices in Buffalo, N.Y and used a program called Cellebrite to extract any and all electronic data and digital information from the phone. Upon reviewing all the data from the phone, the only thing that the dynamically corrupt duo of Price and Artrip found were Google searches conducted the night after the alleged crime pertaining to information disclosed to Plaintiff by then Fredonia Police Chief Brad Meyers and Assistant District Attorney Andrew Molitor during an off the record and undocumented police interrogation that the district attorneys office and Andrew Molitor denied for two years from having occurred before finally admitting at the start of Plaintiff's second trial that, in a half truth,



Pg 28

inspect the warrant and they failed to ① understand the warrant was facially deficient, lacked particularity and had an unlimited scope and limitations and ② understand the Fourth Amendment requirements for a search warrant and supporting case law for a warrant and ③ understand that the warrant they executed was obviously defective.

Wherefore, Plaintiff asserts that the search warrant in this matter as determined by the New York State Appeals Court, Fourth Department was facially deficient and invalid and the search was thus clearly unreasonable in violation of the Fourth Amendment of the U.S. Constitution for among other reasons, ⓐ the warrant failed all together to comply with the Fourth Amendment's unambiguous requirement that a warrant particularly describe the person or things to be seized; ⓑ the warrant failed to properly incorporate supporting documents and the warrant was not restricted by reference to any particular crime and the fact that the application for the warrant referenced a particular crime did not save the warrant from its facial invalidity; ⓒ by not adequately describing the items to be seized and searched with any particularity, the search of Plaintiff's phone should be regarded as "warrantless" and ⓓ search and seizures of property without a warrant were presumptively unreasonable; and ⓔ the presumptive rule against warrantless searches apply with equal force to searches whose only defect is a lack of particularity in the warrant.

⑬ Furthermore, Plaintiff does not believe, that due to the circumstances stated herein, that none of the defendants are entitled to qualified immunity, for among other reasons, ⓐ no reasonable officer could have believed that a warrant that plainly did not comply with the Fourth Amendment's particularity requirement was valid and a reasonable officer(s) would have ensured that the search warrant incorporated the search warrant application, and ⓑ because Dave Price prepared the invalid warrant and he executed the warrant with Chad Artrip,



Pg.30

required by New York State law NYCPL 60.45; NYCPL 60.45 (3)(a)(see Exhibit Y )
. Instead, Andrew Molitor and Patrick Swanson and Brad Meyers engaged
. in a two year coverup and conspiracy to publicly deny that an interrogation
. ever occurred with Plaintiff in interviews with local tv stations (Spectrum, WIUB)
to press releases issued to local newspapers and radio stations to social media
posts by Patrick Swanson on Facebook (Exhibit K). Additionally, Brad Meyers
gave a radio interview with a local radio station WDOE denying that such an
interrogation ever occurred. While this conspiracy and coverup started in 2016
it didn't end until 2018 when questioned by the Court at the start of Plaintiff's
second trial, Andrew Molitor finally admitted in a half truth, that he was present
for such an interrogation. (See Exhibit K) The late disclosure of Molitor's admission
prevented defense counsel from naming Andrew Molitor as a witness to explain
the content of the interrogation to explain why those google searches were conducted.
(16) Whereas, it is now obvious through his late admission of being present
for the interrogation that Defendants conspired together to deny that former
district attorney Patrick Swanson and former ADA Andrew Molitor vindictively
and maliciously advised Defendants Meyers and later Dave Price regarding the
arrest of Plaintiff and later the search and seizure of Plaintiff's phone, which
the defendants used to manufacture and fabricate false and misleading evidence
against Plaintiff in violation of Plaintiffs Due Process rights. (See Exhibit K).
In August of 2023 due to the fact that the warrant to seize and search
Plaintiff's phone wasn't sufficiently particularized, referenced by any crime or
properly incorporated the search warrant application with the search warrant, the
New York State Supreme Court, Appellate Division, Fourth Department
suppressed all evidence relating to Plaintiff's phone, reversed the conviction
and vacated the sentence. (See Exhibit I). Therefore, Plaintiff seeks to sue
Defendants Swanson and Molitor for failing to perform the administrative
and investigative functions of their positions. and for intentionally inflicting



of Plaintiff's property.

(19)         Violation of Equal Protection:

There can be no doubt that law enforcement agencies across America have protections, policy and safeguards are in place to ensure that when its officers execute a search warrant, that it complies with the Fourth Amendment of the U.S. Constitution. As a similarly situated person, Plaintiff is entitled to equal protection under the law regarding search warrants, and Defendants Price, Artrip, Moliter, Swanson, Habig and brupa and the supervisors of Price (Meyers), Artrip, Habig and brupa failed in ensuring Plaintiff equal protection under the law in applying for and executing an invalid search warrant and an illegal, warrantless unconstitutional search of Plaintiff's property.

(20)         Failure to Protect

There is no doubt that Defendants Price, Artrip, Moliter, Swanson, Habig, brupa, Meyers and their supervisors failed to protect Plaintiff from violations of his constitutional rights and illegal, warrantless and unconstitutional search of his property. Defendants had a legal, moral, and ethical obligation to ensure that Plaintiffs rights and protections as guaranteed by the U.S. Constitution were protected. They failed in this regard. After failing to prove their case in the first trial, after having to acknowledge Moliters participation in an off the record interrogation after two years of denial and in following the D.A.'s ideology of "My job is to get convictions" (see Exhibit Z(I)) apparently at any and all costs to the innocent, sought a search warrant for Plaintiff's property in a desperate attempt to find anything to use against him at a second trial. Contrary to what the Chautauqua County District Attorney believes, his job should not be to get convictions. It should be the fair and equitable distribution of justice. These defendants had a moral and legal obligation to protect Plaintiff's rights. Given there background, training, education and experience Defendants should have known that the search warrant and subsequent search of Plaintiff's property was unconstitutional and illegal. Instead of doing the right thing and trying to rectify the situation



2022 WL 826344, the F.B.I conducted a search that exceeded the bands of a search warrant issued, (Exhibit O); The United States v. Cherra 184 F.3d 403 which illustrates F.B.I policy when executing a search warrant, which clearly wasn't followed in Petitioner Saeli's case (Exhibit P) and United States v. Smith 2023 WL 2446202, holding that the warrantless search of defendant's cell phone was unreasonable under the Fourth Amendment (Exhibit Q); and Richir v. Village of Fredonia, N.Y, where the former police chief of Fredonia, N.Y, a member of the Chautauqua County District Attorneys Office (Jason Schmidt) and several John Doe Fredonia Police Officers who were accused of, among other violations, of false arrest, denial of Due Process and an illegal search of her home and property. This Plaintiff also sued members of the Chautauqua County District Attorneys office for failing to adequately perform the administrative and investigative duties of their position. (See Exhibit R, Richir v. Village of Fredonia, N.Y et al 2008 WL 2778920). Therefore, all prior defendants and the agencies and municipalities they worked for were on notice of risk of its officers committing constitutional violations and deliberately ignored that risk. Furthermore, it is evident from these instances that Defendants, their supervisors and the F.B.I and the Village of Fredonia, NY failed to and continue to fail to properly train and supervise its officers in respect to constitutional violations of a citizen. Finally, Chautauqua County, N.Y, the Sheriff's Department and its jail were on notice of risk of its officers committing constitutional violations through various lawsuits, including, but not limited to:

23    Woodward v. Chautauqua County, NY et al 15-CV-0246 (Exhibit S); Tota v. Bentley, et al 2008 WL 3540375 (Exhibit T); Pierce v. Chautauqua County Sheriff's Department 2007 WL 2902954 (Exhibit U); Pusateri v. Chautauqua County Jail et al 2021 WL 3160768 (Exhibit V); Latona v. Chautauqua County Jail, 2004 WL 2457797 (Exhibit W). Therefore, the Chautauqua County Sheriff's



any issues of concern with the judge, ensured that it complied with the Fourth Amendment requirements and ensured that Plaintiffs rights under the Fourth Amendment were protected. Instead, when faced with an obviously deficient search warrant that resulted in no direct evidence of any crime being committed located on the phone, defendants Swanson and Molitor relied on Google searches as a "consciousness of guilt evidence" as opposed to the real reason those searches were done which is they were based on information that Molitor disclosed during an interrogation with Plaintiff the night after the alleged crime in 2016 that Swanson and Molitor denied publicly for two years of having occurred before finally admitting at the start of Plaintiff's second trial in 2018 that the interrogation did indeed happen and he was present for it.

25.    As a result of Defendants Price, Artrip, Habig, bruppa, Molitor and Swanson's conduct, Plaintiff Sadi was maliciously prosecuted for and wrongfully convicted of crimes he did not commit and sentenced to 16 years in prison, of which he served more than seven years before the Appellate Court vacated the sentence in 2023. As a result of Defendants conduct in violating Plaintiffs Fourth Amendment rights and their role in Plaintiff's trial, their media exploits, the evidence they offered at trial including the testimony of Price, Artrip, Habig, and bruppa, Plaintiff was maliciously prosecuted and falsely convicted of crimes he did not commit. As a result of their conduct and Plaintiffs ensuing seven plus years of incarceration, Plaintiff suffered severe emotional distress for which he sought treatment for while in NYSDOCCS custody including severe depression, anxiety, bipolar disorder, suicidal and homicidal ideations, panic attacks, paranoia, humiliation, public scorn and shame and degradation and post traumatic stress disorder due to Defendants pretrial, at trial and post trial, and coupled with these emotional disturbances that Plaintiff had to suffer through and endure through seven years of



Pg 38

or Molitor in anyway as required by New York State Law CPL 60.45(3)(a) (See Exhibit Y). For the next two years, Defendants Swanson, Molitor and Meyers would issue press releases, statements and interviews via their social media, local newspapers and tv and radio stations denying that such an interrogation ever occurred and other slanderous and libelous statements about Plaintiff causing public outrage, scorn, scourge and threats against Plaintiff. Two years after the fact, at the start of Plaintiff's second trial in 2018 Andrew Molitor, in a half hearted admission, finally admitted that the interrogation did occur and he was in fact present for it. (See Exhibits K and Z respectively). All Defendants named herein, Specifically Swanson and Molitor were central to the investigation and prosecution of Plaintiff, morally and legally culpable for the trial outcome and they crossed moral and ethical lines and breeched public trust in doing so. Given the weak case that Defendants had in this matter, they all conspired with each other to look for ways to boost their case and obtain a conviction at any and all costs, including lies, coverup, fraud and violations of Plaintiffs Constitutional rights: "My first and foremost job is to get convictions" (see Exhibit Z(1)). With the alleged victim stating to two government witnesses that he walked (thus negating any kidnapping charge) Swanson refused (as did Molitor) to allow the alleged victim to testify at Plaintiff's second trial. Regarding the phone, not having any probable cause or direct evidence as to what to look for, Defendant Price (most likely at the direction of Swanson and Molitor) obtains a generic warrant for "any and all digital and electronic data" on the phone. The search warrant was not referenced by any crime nor incorporated by any supporting documents. The "evidence" from the phone consisted of google searches that were conducted the day after the alleged crime on the night of the interrogation and were based on information that Defendants Meyers and Molitor disclosed to Plaintiff during the interrogation that Meyers, Molitor, and Swanson denied for two years of



Pg 40

Plaintiff. Whereas, the emotional distress inflicted by Defendants on Plaintiff has drastically altered Plaintiff's lifestyle, behavior, family, and social aspects of his life to the point where Plaintiff's paranoia and panic attacks and fear of retaliation caused by Defendant's actions and conduct make it difficult to interact with others, constantly fearful of being attacked to the point he now feels he has to attack someone to prevent them from first attacking him. Plaintiff's thinking, behavior and lifestyle after wrongfully spending over seven years in prison prevents him from leading a productive life to the point where Plaintiff seeks to become a recluse and withdraw from society, even though in therapy and on mental health medications.

(28)

## Request For Damages:

Wherefore due to the admission of evidence introduced at Plaintiff's second trial from an invalid warrant and given the fact that each Defendant Price, Artrip, Habig and brupa committed perjury and falsely testified at Plaintiff's second trial in order to biasly influence the jury to obtain a conviction and that such evidence and testimony led to the wrongful conviction of Plaintiff that resulted in Plaintiff's Fourth Amendment and Due Process Rights being violated, Plaintiff suffering from Defendant's intentional infliction of emotional distress as a result of their conduct and actions and over seven years of incarceration that was subsequently vacated on appeal, Plaintiff seeks $5 million dollars from Price and Artrip each; $2 million dollars from Habig, brupa, Meyers and Maslak each; $4 million dollars from Swanson and Molitor for failing to adequately perform the administrative and investigative functions of their positions; and $1 million dollars each from Defendants the Village of Fredonia, N.Y., the Chautauqua County Sheriff's Department and the Federal Bureau of Investigation's John Doe Supervisors for failing to properly train and supervise Price, Maslak, Meyers, Habig, brupa and Artrip.

. its officers violating an individual's rights and protections by establishing inadequate procedures to document an arrest, interrogation or how to properly execute a search warrant and these policies are complicit in violating an individual's rights and protections against illegal search and seizure and false arrest among others. Further violations caused by the policies or lack thereof by the Village of Fredonia, NY include not having seperate holding cells and bathrooms for male and female detainees and not possessing or maintaining audio and visual recording devices to be in compliance with NYCPL 60.45. Finally, despite these repeated violations, it seems no one within the government of the Village of Fredonia NY to review and update its policies concerning the training of its officers to ensure that their actions and conduct are in compliance with the law and the constitution as Defendants Meyers, Price and Maslak failed to do in Petitioner's case. Additionally, current Chief of Police Dave Price was passed over for the Chief of Police position three times as not only his own officers deemed him unqualified for the position, but also the previous Mayor and members of the board of trustees deemed him unqualified before he assumed that position because nobody else wanted it.

28(d)   Furthermore, it is obvious that the policy of Fredonia NY in training and educating its officers is deficient and did not adequately prepare and train Meyers, Price and Maslak on how to properly document and perform a legal investigation and arrest, how to properly execute a a search warrant to ensure it complies with the requirements of the U.S. Constitution's Fourth Amendment, how to properly document and record a police interrogation so that it is in compliance with NYCP Sect. 60.45

(Rev. 01/21) Complaint for Violation of Civil Rights (Prisoner)

C.    What date and approximate time did the events giving rise to your claim(s) occur? On or about August 15 2016 at or about 9:30pm - 10:30pm Fredonia police officer Michael Hodkin did record a conversation with the alleged victim (as shown in exhibit 2) in which the alleged victim told officer Hodkin the right of the alleged crime that he walked from walmart to the location he was found at. The tape recording was not preserved and/or destroyed due to its exculpatory nature

D.    What are the facts underlying your claim(s)? (For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)

Fredonia police officer Michael Hodkin conspired with Chautauqua County Assistant District Attorney Andrew Molitor to suppress, engage in evidence tampering and destroy a tape recorded conversation between Fredonia Police officer Michael Hodkin and the alleged victim in this matter, in which the alleged victim admitted that he walked from Walmart to the location he was found at. That tape recorded conversation's existence is documented in Exhibit 2, . The tape itself (like the vehicle dash cam) magically disappeared and was never turned over as evidence due to its exculpatory nature. Plaintiff only became aware of the document and the tape recorded conversation as a result of the /2024 discovery process

V.    Injuries (See Exhibits M & 2)

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive. Officer Hodkin's actions violated my civil and constitutional rights under the law to due process and a fair trial. As a result, I was maliciously prosecuted, libeled, slandered, defamed and suffered emotional distress.

This is a 42 USC 1983 civil Rights injury for, in his individual and official capacity Officer Michael Hodkin violated Plaintiffs due process rights and right to a fair trial as well as malicious prosecution by failing to preserve and turn over exculpatory evidence concerning Plaintiffs innocence to Plaintiffs as part of pretrial proceedings/discovery. The tape recording, like the vehicle dash cam were not preserved and were destroyed because they were

VI.    Relief (See Exhibits 2, & M)    exculpatory in nature.

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Plaintiff seeks compensatory, monetary punitive and any other relief/damages available to him under the law from Fredonia Police officer Michael Hodkin. As a result of officer Hodkin's failure to adequately perform the administrative and investigative functions of a police officer and preserve, document and disclose the exculpatory evidence of the tape recording, plaintiff was maliciously prosecuted, libeled, slandered, defamed and suffered extreme emotional distress. Plaintiff seeks compensatory and punitive damages from Michael Hodkin in the amount of $21 million dollars.



Pg 45

(29)    <u>Request For Jury Trial:</u>

Plaintiff does hereby respectfully requests a jury trial in this matter.

(30)                    <u>Conclusion:</u>

Wherefore, as stated herein, Plaintiff asserts that Defendants Price, Maslak, Artrip, Habig and brupa violated Plaintiff's Fourth and Fourteenth Amendment rights under the U.S. Constitution, that Defendant Supervisors of Price and Maslak John Doe of the Village of Fredonia NY; the F.B.I John Doe Supervisor of Chad Artrip; the Chautauqua County Sheriff Department John Doe Supervisor of Habig and brupa for failing to properly train and supervise Price, Maslak, Artrip, Habig, and brupa and had they done so they would not have violated Plaintiff's constitutional rights and Defendants Swanson and Molitor failed to adequately perform the administrative and investigative functions of their jobs regarding the execution of the search warrant and its review and use of the evidence at trial obtained because of it and regarding the advisory role Swanson and Molitor played in advising the Village of Fredonia NY Defendants and Chad Artrip and the F.B.I in their joint investigation, Plaintiff Saeli respectfully requests that this Court grant Plaintiff the relief stated herein and grant him any further relief that this Court may deem just and proper.

                   Relief:

Based on the facts stated herein, Plaintiff requests monetary, compensatory and punitive damages as follows: $21 million dollars each from defendants, Price, Molitor, Habig, brupa, Artrip, Swanson and Meyers for violation Plaintiffs Fourth Amendment Rights under the U.S Constitution; $21 million dollars each from Michael Hodkin and Michael Napierella

$21 million dollars from defendants Schmidt & Woodard for not performing their administrative and investigative duties at their jobs; $21 million dollars each from Fredonia, NY, Chautauqua County NY and FBI/United States; Monell claim

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Chautauqua County Jail in Mayville, NY 14757 (2016-2018; 2023-2024)

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

**D.**   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

**E.**   If you did file a grievance:

1.   Where did you file the grievance?

Chautauqua County Jail, while housed in Pod A (see Exhibit A, original Complaint)

2.   What did you claim in your grievance? That jail officials Louis Habig and Jeffroy Grupa violated my Fourth Amendment rights and protections under the U.S Constitution by executing a facially deficient search warrant that through their education and training and upon reading and review of the search warrant should have known that the search warrant was facially deficient and unconstitutional and Habig and Grupa despite the facial invalidity of the search warrant conspired with officers Artrip and Price to violate Plaintiff's Fourth Amendment rights under the U.S Constitution.

3.   What was the result, if any?  (See , Exhibit A)

Grievance Coordinator found grievance complaint unsubstantiated and denied grievance

4.   What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. (Describe all efforts to appeal to the highest level of the grievance process.)

I appealed the decision of Grievance Coordinator Tara Graves to Lt. Dale Cornell who denied the grievance on 9/22/23. I then appealed to the New York State Commission of Correction on 9/25/23 who denied the grievance (see Exhibit A)

(Rev. 01/21) Complaint for Violation of Civil Rights (Prisoner)

**F.**    If you did not file a grievance:

1. If there are any reasons why you did not file a grievance, state them here:

   Grievance was filed.

2. If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

   Grievance was filed

**G.**    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

   All administrative remedies were exhausted

   *(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.    Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☒ Yes

☐ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

United States District Court, Western District of New York
2017-2023.

(Rev. 01/21) Complaint for Violation of Civil Rights (Prisoner)

**A.**   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

**B.**   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

   1.   Parties to the previous lawsuit

      Plaintiff(s) _____

      Defendant(s) _____

   2.   Court *(if federal court, name the district; if state court, name the county and State)*

      _____

   3.   Docket or index number

      _____

   4.   Name of Judge assigned to your case

      _____

   5.   Approximate date of filing lawsuit

      _____

   6.   Is the case still pending?

      ☐ Yes

      ☐ No

      If no, give the approximate date of disposition. _____

   7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

      _____

(Rev. 01/21) Complaint for Violation of Civil Rights (Prisoner)

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   November 10, 2023

Signature of Plaintiff       _Sam Sael_

Printed Name of Plaintiff    Samuel J Saeli

Prison Identification #       18B2527

Prison Address                Attica Correctional Facility Box 149

Attica _____ New York _____ 14011-0149
       *City*          *State*        *Zip Code*

### B.   For Attorneys

Date of signing:   _____

Signature of Attorney     _____

Printed Name of Attorney  _____

Bar Number                _____

Name of Law Firm          _____

Address                   _____

_____
*City*          *State*        *Zip Code*

Telephone Number          _____

E-mail Address            _____

Print       Save As...       Add Attachment       Reset